

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-1-2005

# USA v. Williams

Precedential or Non-Precedential: Precedential

Docket No. 04-4043

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"USA v. Williams" (2005). *2005 Decisions.* Paper 630.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/630

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 04-4043
_____

UNITED STATES OF AMERICA


v.

SHANNON WILLIAMS,

*Appellant*

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
D.C. Criminal No. 03-cr-00292-01
District Judge: Honorable Sylvia H. Rambo

_____

Submitted pursuant to Third Circuit LAR 34.1(a)
July 11, 2005

Before:  ALITO and BECKER, *Circuit Judges*
and SHADUR,  *District Judge**

(Filed: August 1, 2005)


John F. Yaninek, Esquire
Mette, Evans & Woodside

_____

    *  Honorable Milton I. Shadur, United States District Judge
for the Northern District of Illinois, sitting by designation.

3401 North Front Street
Harrisburg, PA 17110-0950
    *Counsel for Appellant*

Thomas A. Marino
United States Attorney
James T. Clancy
Assistant U.S. Attorney
Federal Building
228 Walnut Street
P.O. Box 11754
Harrisburg, PA 17108
    *Counsel for Appellee*

_____

OPINION OF THE COURT

_____

SHADUR, *District Judge*.

After the district court had denied his motion to suppress evidence obtained during a warrantless search by parole officers, defendant-appellant Shannon Williams ("Williams") executed a plea agreement with the government pursuant to which he entered a conditional guilty plea on a charge of felon in possession of a firearm. That agreement entitled Williams to appeal the adverse suppression decision and to withdraw his guilty plea should he prevail on appeal.

Williams now appeals both (1) the denial of his motion to suppress and (2) the sentence imposed by the district court. We affirm the district court's decision as to suppression, but we remand the case for resentencing pursuant to our en banc decision in *United States v. Davis*, 407 F.3d 162 (3d Cir. 2005).

### Facts

Williams began serving a state parole sentence in March 2003 under the supervision of Christine McElhinny, a parole agent for the Pennsylvania Board of Probation and Parole. As a

condition of his parole, Williams signed an agreement that provided in part:

> I expressly consent to the search of my person, property and residence, without a warrant by agents of the Pennsylvania Board of Probation and Parole. Any items, in the possession of which constitutes a violation of parole/reparole shall be subject to seizure, and may be used as evidence in the parole revocation process.

During his parole term Williams first lived with his sister, but at the time relevant to this appeal he was living with his mother. As a condition of McElhinny's approval of Williams' residence there, his mother signed a written Home Provider Agreement Letter that contained the following provision:

> I understand the Parole Supervision Staff has a right to search the residence at anytime when reasonable suspicion exists that parole has been violated. I will not deny them access to this residence. I understand that if I deny access to Parole Supervision Staff, the laws of Pennsylvania give Parole Supervision Staff the authority and responsibility to force entry into my residence to search for the parolee or contraband without the need of a warrant.

Williams was monitored closely by McElhinny throughout his parole term. While still living with his sister, he received three warnings for technical parole violations: failure to make job contacts, violation of curfew and presence of ammunition at his residence. That last violation followed a search of Williams' sister's home conducted by McElhinny, based on a tip she had received that Williams was selling drugs. Though she found no drugs, she did find some ammunition.

Shortly after Williams moved in with his mother, McElhinny received another tip that someone was seeking to shoot Williams. McElhinny responded by arranging a meeting at the mother's home, where she discovered that Williams had quit his job, violated his curfew and broken his leg. Williams also told McElhinny that people were looking for him and that he wanted to move to Albany, New York.

McElhinny thought that the information she had obtained about

Williams' activities warranted notification of the local police, and she spoke to Detective Matthew Luchko ("Luchko") of the York City Police Department for that purpose. In response Luchko informed McElhinny that his investigation of a fatal shooting at a local bar had revealed that Williams was at the bar when the homicide occurred and that Luchko believed he might have information about the incident. When Luchko said he would like to speak with Williams as part of his investigation, McElhinny set up a meeting at her office.

Williams did not appear at the appointed time, and while waiting for Williams to arrive Luchko told McElhinny that Williams might have a gun. After waiting a half hour Luchko left, and Williams arrived shortly thereafter. By that time McElhinny had decided that the information conveyed by Luchko warranted a search of Williams' residence. After she discussed the situation with her supervisor, they handcuffed Williams and transported him to his mother's home for a search.

McElhinny, her supervisor and another parole agent began the search about 2 p.m. September 30, 2003. It did not take long for the second parole agent to find an ice bucket containing two loaded handguns, cocaine and Williams' parole supervision fee receipt. When those items were found, the parole agents halted the search and called Luchko.

Luchko and his partner came to Williams' mother's house and retrieved the found items. While the parole officers transported Williams to the York County Prison, Luchko obtained a search warrant that authorized a search of Williams' third-floor bedroom. Although that warrant-authorized search yielded no additional items, the guns found by the parole officers during their warrantless search formed the basis for the federal charges brought against Williams.

Williams was indicted by a grand jury in October 2003 on charges of possession of a firearm by a convicted felon and possession of stolen firearms shipped and transported in interstate commerce. Williams originally entered a plea of not guilty and filed a motion to suppress all evidence recovered during the warrantless search. After that motion was denied by the District Court, Williams entered into the conditional plea agreement and was sentenced on October 13, 2004.

## Motion To Suppress

We review the denial of a motion to suppress for clear error as to the underlying factual determinations and exercise plenary review over the application of the law to those facts (*United States v. Lockett*, 406 F.3d 207,

4

211 (3d Cir. 2005)).  Because the basis for denial of the motion was a determination that the search that produced the evidence was valid, we must review the propriety of the warrantless search that led to the discovery of incriminating evidence.

In that regard we begin with the Supreme Court's unanimous teaching in *United States v. Knights*, 534 U.S. 112, 118-19 (2001)(internal quotation marks omitted):

> The touchstone of the Fourth Amendment is reasonableness, and the reasonableness of a search is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate government interests.

That balance generally requires that a warrant be obtained upon a showing of probable cause before a residence is searched.  But when a parolee is involved and has signed a consent agreement such as the one at issue here, both sides of the balance are affected: the parolee's reasonable expectation of privacy is decreased and the government's reasonable need to monitor behavior is increased (Knights, 534 U.S. at 119; *see also Griffin v. Wisconsin*, 483 U.S. 868, 871-72 (1987)).[1]  As a result, "no more than reasonable suspicion" (*Knights*, 534 U.S. at 121) is required to justify a search in these circumstances.[2]

---

[1] Both *Knights* and *Griffin* both involved searches of probationers rather than parolees.  But we have treated both situations identically because "there is no constitutional difference between probation and parole for purposes of the fourth amendment" (*United States v. Hill*, 967 F.2d 902, 909 (3d Cir. 1992)(internal quotations omitted)).

[2] Two additional points bear mention.  First, although the actual language of the agreed-upon parole condition did not speak in terms of "reasonable suspicion," we have previously interpreted that same condition "to include an implicit requirement that any search be based on reasonable suspicion" (*United States v. Baker*, 221 F.3d 438, 448 (3d Cir. 2000)).  And that means we need not address a question that *Knights*, 534 U.S. at 120 n. 6  left unanswered:  whether a parole search can be based on something

5

To decide whether "reasonable suspicion" exists, we consider the totality of the circumstances to determine whether the "officer has a particularized and objective basis for suspecting legal wrongdoing" (*United States v. Arvizu*, 534 U.S. 266, 273 (2002)(internal quotations marks omitted)).  Here there can be no doubt that the totality of the circumstances supports a conclusion that McElhinny initiated the search on the basis of reasonable suspicion.  She obviously had knowledge of Williams' numerous parole violations, which included storing ammunition at his residence; she had received earlier tips that Williams was dealing drugs and that someone wanted to shoot him; she had heard from Williams himself that people were looking for him; and she had received information from Detective Luchko that Williams might have information about a homicide.  Based on all of that, we find that McElhinny reasonably suspected that Williams was violating his parole (and indeed that he was engaged in criminal conduct) when Luchko told her that Williams was suspected of having a gun.

Williams responds that the search should nevertheless be declared invalid because its true purpose was to further a criminal investigation rather than to examine possible parole violations.  Put differently, Williams asserts that McElhinny was merely acting as a "stalking horse" for the police.  In *United States v. Watts*, 67 F.3d 790, 794 (9th Cir. 1995) (internal citations omitted) the Ninth Circuit described the "stalking horse" theory in these terms[3]:

> A probation officer acts as a stalking horse if he conducts a probation search on prior request of and in concert with law enforcement officers.  However, collaboration between a probation officer and police does not in itself render a probation search unlawful.

less than reasonable suspicion. Second, the "reasonable suspicion" standard also applies to searches of Williams' mother's residence -- and in that respect she had earlier agreed to such searches generally (there is no argument that her consent was not effective), and the government's heightened interest in monitoring Williams reasonably extended to his mother's residence while he was living there.

3  Although *Watts* was reversed on other grounds at 519 U.S. 148 (1995), the Court of Appeals' opinion remains useful for purposes of analyzing the proposition advanced there.

6

The appropriate inquiry is whether the probation officer used the probation search to help police evade the Fourth Amendment's usual warrant and probable cause requirements or whether the probation officer enlisted the police to assist his own legitimate objectives. A probation officer does not act as a stalking horse if he initiates the search in the performance of his duties as a probation officer.

In a more succinct articulation of the same view, the Eighth Circuit concluded in *United States v. McFarland*, 116 F.3d 316, 318 (8th Cir. 1997) that a parole search may be invalidated "when it is nothing more than a ruse for a police investigation."

We have never directly decided the validity of the "stalking horse" theory. In two cases (*Hill*, 967 F.2d at 911 and *Shea v. Smith*, 966 F.2d 127, 132-33 (3d Cir. 1992)) we considered "stalking horse" claims, but we concluded in both instances that the particular claims asserted there were unpersuasive in light of the demonstrated evidence of reasonable suspicion. That approach obviated any need to analyze the viability of "stalking horse" claims as such.

We might well pursue a similar fact-specific inquiry and result here. On that score, Williams has presented no evidence of an explicit agreement between the parole officers and the police. And while there is no doubt that McElhinny acted in response to information she received from the police, the mere fact of collaboration is certainly not enough to invalidate a parole search. Indeed, such collaboration is expected given the similar duties of parole officers and police officers (*see, e.g.*, *United States v. Reyes*, 283 F.3d 446, 463-64 (2d Cir. 2002)).

But we reject Williams' argument for a more fundamental reason: It is clear that the Supreme Court's more recent teaching in *Knights* precludes the viability of "stalking horse" claims in this context. "Stalking horse" claims are necessarily premised on some notion of impermissible purpose, but *Knights* found that such inquiries into the purpose underlying a probationary search are themselves impermissible. Instead, relying on its earlier opinion in *Whren v. United States*, 517 U.S. 806, 813 (1996), the Court concluded that ordinary Fourth Amendment analysis dictates the propriety of a search and that "there is no basis for examining official purpose" (*Knights*, 534 U.S. at 122).

Our reading of <u>Knights</u> to preclude "stalking horse" claims is consistent with that of the four other circuits that have considered the same

7

issue (*United States v. Brown*, 346 F.3d 808, 810-12 (8th Cir. 2003); *United States v. Tucker*, 305 F.3d 1193, 1199-1200 (10th Cir. 2002); *United States v. Stokes*, 292 F.3d 964, 967-68 (9th Cir. 2002); <u>Reyes</u>, 283 F.3d at 463-65). And it is noteworthy that among those four are the two circuits--the Eighth and the Ninth--that had explicitly recognized "stalking horse" claims pre-*Knights*.

Beyond that, Williams attempts to attack the search based on his contention that it did not comply with Pennsylvania law. But the justification for the propriety of the search here does not rely on its being conducted pursuant to the special needs of a state parole system that is itself consistent with the Fourth Amendment. That would be a valid justification under the Supreme Court's earlier decision in *Griffin*, 483 U.S. at 873. But *Knights*, 534 U.S. at 117-18 clearly offers a second and discrete path to a legitimate search when a probationer has agreed to a search condition, and that path involves applying ordinary Fourth Amendment principles rather than any sort of analysis of special needs; *see also Tucker*, 305 F.3d at 1200. Moreover, the Pennsylvania Supreme Court has recently reconfirmed its earlier holding that "the Pennsylvania Constitution provides a parolee with no greater protection than the United States Constitution in the area of warrantless searches of a parolee's approved residence, where the parolee has signed a parole agreement in which he agreed to the search of his premises as a condition to the parole" (*Commonwealth v. Hughes*, 836 A.2d 893, 899 (Pa. 2003)). Here Williams' parole agreement explicitly authorized warrantless searches conducted by parole agents, and the search at issue was conducted by such agents, not by police.

In short, the only potential defense against the propriety of the search that Williams has put forward is a claim that is clearly barred. Instead of inquiring as to purpose, we ask only whether the search was reasonable under ordinary Fourth Amendment principles. And as we have already discussed, reasonableness in this context requires no more than reasonable suspicion, which clearly was present. Williams' motion to suppress the evidence on the ground that the search violated his Fourth Amendment rights must therefore fail.

<u>Sentencing</u>

Because Williams was sentenced before the Supreme Court's decision in *United States v. Booker*, 125 S.Ct. 738 (2005), his case comes within the ambit of our en banc decision in *Davis*, 407 F.3d at 164-66. And because the District Court, acting pre-*Booker*, perforce imposed the sentence governed by a "Guidelines framework erroneously believed to be mandatory" (*Davis*, *id*.

8

at 165), we must vacate Williams' sentence and remand for resentencing.

## Conclusion

Because the search that led to the recovery of evidence was constitutionally permissible, we AFFIRM the District Court's denial of Williams' motion to suppress. And for the reason just stated, we VACATE Williams' sentence and REMAND for consideration of the appropriate sentence by the District Court in the first instance.