NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-4672
_____

UNITED STATES OF AMERICA

v.

DEWAYNE CREWS,

Appellant
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 06-cr-00418)
District Judge:  Hon. Joy Flowers Conti
_____

Submitted Under Third Circuit LAR 34.1(a)
July 31, 2012

Before:  AMBRO, JORDAN, and VANASKIE, *Circuit Judges*.

(Filed:  September 5, 2012)
_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Dewayne Crews appeals his conviction and sentence for possession with intent to

distribute 50 or more grams of cocaine base ("crack").  For the following reasons, we will

affirm.

## I.  Background

Local police in Washington County, Pennsylvania arrested William Baugh in July 2006 for narcotics offenses and endangering the welfare of a child.  Baugh agreed to cooperate with the police in a narcotics investigation by making controlled drug purchases from local dealers, including Crews, from whom Baugh had previously purchased crack.

On August 30, 2006, Baugh, under police supervision, called Crews to order $50 worth of crack.  Police provided Baugh with the necessary cash, the serial numbers of which had been recorded.  Baugh drove to Crews's residence and, when he arrived, Crews briefly emerged to tell him that someone would come out to meet with him.  Duane Price later came out and handed Baugh some crack in exchange for the $50.  Baugh then returned to the police and surrendered the crack that he had purchased.

The next day, Crews arrived at a local police station for a scheduled meeting with his probation officer.[1]  Crews confirmed that he was unemployed and that his address was 456 Third Street, the same location where Baugh had purchased crack the previous day.  The probation officer administered a drug test and Crews tested positive for cocaine, marijuana, and opiates.  Crews admitted that he had "been around cocaine," that he had taken prescription painkillers to alleviate back pain, and that he had recently smoked marijuana.  (Supp. App. at 494.)[2]  The probation officer then searched Crews and

---

[1] On July 6, 2006, Crews pled guilty to resisting arrest in the Washington County Court of Common Pleas and was sentenced to one year of probation.

[2] "Supp. App." refers to the government's supplemental appendix.

2

discovered over $400 in cash and two cell phones. Based on the interview, drug test, cash, and phones, the probation officer decided to search Crews's residence.[3] The probation officer brought Crews with him to be present for the search. Upon arriving, they found Jody Hill, Crews's ex-girlfriend, removing her belongings from the home. Hill was present during the search of the home. The probation officer began his search in the master bedroom and discovered a bulletproof vest, a digital scale, and crack. Following those discoveries, the officers obtained written consent from Crews to search the remainder of the home. During the search, they located plastic baggies, a handgun, and an "owe sheet."[4] After the search, officers compared the serial numbers of the controlled purchase funds with the money confiscated from Crews by the probation officer and found that several bills matched.

As a result, Crews was detained for probation violations on August 31, 2006. On October 26, 2006, a state criminal complaint was filed against Crews.[5] Subsequently, on December 5, 2006, a federal grand jury in the Western District of Pennsylvania indicted Crews for possession with intent to distribute 50 grams or more of crack in violation of 21 U.S.C. § 841(a)(1).

At his trial in the United States District Court for the Western District of Pennsylvania, several police officers, along with Baugh and Hill, testified against Crews.

---

[3] Several local police officers accompanied the probation officer on the search, including those involved in the previous day's controlled drug purchase.

[4] Owe sheets are "lists which are used to record money owed on drug transactions." *United States v. Drozdowski*, 313 F.3d 819, 821 (3d Cir. 2002).

[5] The state complaint against Crews was eventually dropped.

Evidence of the controlled purchase, probation interview, drug test, crack, and drug paraphernalia found in his home on August 31 were introduced, as were several letters Crews had sent to Hill admitting that the illicit items seized from the home belonged to him. Crews was convicted and the District Court sentenced him to 188 months' imprisonment followed by five years' supervised release. This timely appeal followed.

## II. Discussion[6]

Crews raises a variety of arguments for setting aside his conviction and sentence. We address the most significant of his many arguments in turn.

### A. *Failure to Indict Within 30 Days*[7]

Crews argues that his detention without indictment for a period of more than 30 days violated his right to a speedy trial. The Speedy Trial Act requires that a defendant be charged within 30 days of his arrest. *See* 18 U.S.C. § 3161(b) ("Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges."). Crews ignores, however, that the Speedy Trial Act's 30-day clock only begins to run at the start of *federal* detention. Because his August 31 arrest and subsequent detention were on state charges, they did not trigger § 3161(b). *See United States v. Mills*, 964 F.2d 1186, 1189-90 (D.C. Cir. 1992) (noting

---

[6] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291.

[7] We review the District Court's legal conclusions regarding the Speedy Trial Act *de novo*, while factual determinations are reviewed for clear error. *United States v. Rivera Constr. Co.*, 863 F.2d 293, 295 n.3 (3d Cir. 1988).

"the undisputed rule that a *state* arrest does not trigger the Speedy Trial Act's clock, even if the arrest is for conduct that is the basis of a subsequent indictment for a federal offense"). While other courts of appeals have recognized a "ruse" exception in cases involving collusion to detain a defendant on state charges for later federal prosecution, *see, e.g.*, *United States v. Garcia-Martinez*, 254 F.3d 16, 20 (1st Cir. 2001), we need not consider that issue here since there is no evidence to support the application of such an exception. *See United States v. Dyer*, 325 F.3d 464, 468 (3d Cir. 2003) ("We do not at this time need to decide whether to recognize the ruse exception. Even if we were to conclude that the exception is a valid one, [the defendant] has not shown that he would be entitled to invoke it under the circumstances of this case.").[8]

B.      *Failure to Commence Trial within 70 Days*[9]

Crews next argues that the District Court erred in refusing to dismiss the case against him after more than 70 days had elapsed from his first court appearance without trial commencing. The Speedy Trial Act requires that trial commence within 70 days of indictment or the defendant's first court appearance, whichever occurs later. *See* 18 U.S.C. § 3161(c) ("In any case in which a plea of not guilty is entered, the trial of a

---

[8] Crews's attempt to rely on *United States v. Woolfolk*, 399 F.3d 590 (4th Cir. 2005), for the proposition that "the provisions of the Speedy Trial Act can be triggered by any restraint resulting from federal action" (Appellant's Opening Br. at 6) is unavailing. The August 31 arrest and detention were not the result of federal action, and his allegation of "close contact" between state and federal officials, even if true, is irrelevant because such contact is permissible.

[9] Again, review of the District Court's legal conclusions regarding the Speedy Trial Act is *de novo*, while factual determinations are reviewed for clear error. *See supra* note 7.

5

defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs."). Not all days between the triggering events and trial are counted under § 3161, however. Excluded from the 70-day calculation are time periods during which the defendant seeks a continuance and any time "between the filing of and the hearing on a motion." *United States v. Polan*, 970 F.2d 1280, 1284 (3d Cir. 1992).

While two years elapsed between Crews's first federal court appearance in January 2007 and the start of his trial in February 2009, less than 70 of those days are counted under § 3161 because much of the delay resulted from continuances sought by Crews himself and from various other motions filed by Crews. For example, Crews asserts that some of the time between July 16, 2007 and May 1, 2008 is non-excludable, but he is incorrect. On July 16, 2007, Crews's attorney filed a number of motions. The week before the hearing on those motions was to take place, Crews requested and eventually obtained a new attorney. His new attorney never withdrew the motions filed on July 16th, but instead filed a motion for an extension of time on September 13, 2007 and adopted the July 16th motions in a May 2, 2008 filing. As a result, the entirety of the period between July 16, 2007 and May 1, 2008 is rightly excludable. *See* 18 U.S.C. § 3161(h) ("The following periods of delay shall be excluded in computing the time within which an information or an indictment must be filed, or in computing the time within which the trial of any such offense must commence: … Any period of delay

6

resulting from other proceedings concerning the defendant, including but not limited to

… delay resulting from any pretrial motion, from the filing of the motion through the

conclusion of the hearing on, or other prompt disposition of, such motion.").[10]

C.    *Evidence Recovered from the August 31 Search of Crews's Home*[11]

Crews argues that the District Court erred in failing to exclude the drugs and drug

paraphernalia found in his home during the probation officer's August 31 search.[12]  He

claims that, because he was in custody following the failure of his drug test, there was no

basis "for officers to transport [him] to [the residence to] conduct a search for

undescribed contraband."  (Appellant's Opening Br. at 9.)  According to Crews, because

there was no warrant, no exigent circumstances, and only coerced consent, the evidence

recovered in the search was inadmissible.  He ignores, however, that the Fourth

Amendment does not require a probation officer to have probable cause before searching

a probationer's residence.  *United States v. Knights*, 534 U.S. 112, 121 (2001).  All that is

required is reasonable suspicion of a probation violation.  *United States v. Baker*, 221

F.3d 438, 443-45 (3d Cir. 2000).   Here that requirement was met the moment that Crews

---

[10] Likewise, Crews incorrectly asserts that other time periods between January 2007 and July 2007 should not be excluded.  For example, he says that the time period between May 24 and May 29 should count, but his attorney filed a motion for an extension of time on May 24.  The District Court granted that request and correctly noted that the period from May 25 until June 25 was excludable.  Crews makes no arguments with respect to the time period after May 2008.

[11] We review *de novo* the District Court's legal conclusions in deciding a motion to suppress and review factual determinations for clear error.  *United States v. Perez*, 280 F.3d 318, 336 (3d Cir. 2002).

[12] Even though Crews identified 456 Third Street as his residence during the interview with the probation officer, he now says that the home was rented by Hill and that he was an "overnight guest."  (Appellant's Opening Br. at 9.)

tested positive for opiates, marijuana, and cocaine. *See United States v. Becker*, 534 F.3d 952, 956-57 (8th Cir. 2008). Thus, the District Court did not err in refusing to exclude the evidence recovered in the August 31 search of his home.[13]

D.      *Testimony Regarding the "Buy Money"*[14]

Crews argues that the District Court erred in allowing the government to introduce a police officer's testimony that the serial numbers of two bills recovered from Crews on August 31 matched bills  used in the August 30 controlled buy. He also argues that, because state authorities destroyed the bills prior to trial, he was unfairly precluded from examining the currency in support of his defense.[15] Crews invokes the best evidence rule

---

[13] Crews's argument that the search was improper because he was in custody is likewise unavailing. He tries to say the search was not consensual because he was in handcuffs, but whether or not he was restrained is immaterial: as a probationer who was clearly in violation of the terms of his probation, the government was permitted to undertake a follow-up investigation. As the government points out, "a positive drug test clearly implies that a probationer might possess additional amounts of drugs for future use," (Appellee's Br. at 23), and the probation officer may properly investigate that possibility.

Crews also complains that "the probation search was unlawful because it constituted a ruse for a police investigation." (Appellant's Opening Br. at 13.) He is incorrect. Crews presented no evidence of an agreement between the probation officer and police. Even if he had presented such evidence, however, we have rejected the notion that such "stalking horse" claims are a valid basis to challenge a probation officer's search. *See United States v. Williams*, 417 F.3d 373, 377 (3d Cir. 2005) ("'Stalking horse' claims are necessarily premised on some notion of impermissible purpose, but … such inquiries into the purpose underlying a probationary search are themselves impermissible.").

[14] "[We] review[] the District Court's decision to admit or exclude evidence for abuse of discretion." *United States v. Bobb*, 471 F.3d 491, 497 (3d Cir. 2006).

[15] To the extent that Crews contends that the destruction of the currency violated his due process rights, he does not offer any evidence to overcome the District Court's determination that the destruction of the currency was an act of negligence rather than of bad faith. Thus, Crews cannot demonstrate a denial of due process. *See Arizona v.*

to argue that the officer should not have been permitted to testify that the serial numbers matched. *See* Fed. R. Evid. 1002 ("An original writing, recording, or photograph is required in order to prove its content … ."). Here, however, the officer testified as to his firsthand observation that the serial numbers on the seized currency matched the serial numbers on currency used in the controlled buy. Such observations do not trigger the best evidence rule because the officer was not seeking to prove the contents of a writing.[16] The point was the matching of the serial numbers, not whether the numbers had ever been written down in a particular document. *See United States v. Workinger*, 90 F.3d 1409, 1419 (9th Cir. 1996) ("The best evidence rule calls for the introduction of the original writing, recording, or photograph only where the proponent seeks [t]o prove the content of a writing … ." (citation and internal quotation marks omitted)).[17]

---

*Youngblood*, 488 U.S. 51, 58 (1988) ("[U]nless a criminal defendant can show bad faith on the part of the police, a failure to preserve potentially useful evidence does not constitute a denial of due process of law.").

[16] Crews also argues that the admission of the testimony concerning the matching serial numbers was impermissible propensity evidence. *See* Fed. R. Evid. 404(b)(1) ("Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."). The evidence, however, is intrinsic to the charged crime and thus does not trigger Rule 404(b). *See United States v. Cross*, 308 F.3d 308, 320 (3d Cir. 2002) ("Rule 404(b) does not extend to evidence of acts which are intrinsic to the charged offense." (citation and internal quotation marks omitted)).

[17] Although the District Court determined that the best evidence rule applied, we may affirm its decision on any ground supported by the record. *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999).

*E.* *Alleged* Brady *Violations*[18]

Crews asserts that the government violated its obligation to turn over exculpatory evidence pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963). He is, again, mistaken.

He first argues that the government failed to turn over evidence regarding the deal it struck with Baugh in exchange for Baugh's testimony. But the record reflects that the government did disclose the terms of the agreement. (*See* Supp. App. at 281, 291-93.) Indeed, Crews's attorney confirmed to the District Court that he was satisfied with the government's disclosure that Baugh had been paid $20.00 for his assistance in the controlled purchase and that the pending charges against him for narcotics violations and child endangerment were dropped in exchange for his testimony.

Crews also argues that the government never made available for inspection the handgun recovered from his home during the August 31 search. That argument is also without merit. The record shows that the government made the gun available for inspection. (*See* Supp. App. at 281-82, 293-95.) Further, the government did not introduce the gun at trial and the defense used the absence of a gun in its favor during closing arguments. (Supp. App. at 730 ("There is no gun. There is no weapon on this table. There is no gun or weapon presented to you by the government from any witness

---

[18] Because these alleged *Brady* violations were not raised before the District Court, we review Crews's claims for plain error. *United States v. DeMuro*, 677 F.3d 550, 557 (3d Cir. 2012). Often, *Brady* claims not raised before the District Court cannot be addressed by this Court in the first instance. *See United States v. Green*, 556 F.3d 151, 154 n.2 (3d Cir. 2009) ("[B]ecause [a Brady claim] was not formally raised and litigated below, we are … unable to make the requisite materiality determination based on the record before us."). Because of when the alleged *Brady* material was provided to Crews, however, the record is sufficiently developed in this case to dispose of his claims.

10

that was found at the residence.").)

Finally, Crews argues that the government failed to provide evidence of the terms of the agreement between the government and Hill prior to her testimony against Crews. The government, however, provided the terms of that agreement to the defense, and Crews's counsel cross-examined Hill regarding those terms.[19] Thus, Crew's allegations of *Brady* violations are meritless.

F.   *Expert Testimony Regarding Crews's Cell Phones*[20]

Crews challenges the admission of expert testimony regarding the use of cell phones in the drug trade. During the trial, the Government called Pennsylvania State Trooper Michael Warfield as an expert to testify regarding typical practices of drug traffickers. Crews stipulated to Warfield's expertise. Warfield testified that Crews's possession of two cellular phones, including one Boost model,[21] was consistent with drug activity.

Despite his failure to object before the District Court, Crews now argues that it was error for Warfield to testify as an expert because there was insufficient reliable information to support his testimony about the role of cell phones in the drug trade. Warfield, however, has participated in over 200 drug investigations for the past 17 years.

---

[19] Crews also argues that the District Court erred in allowing the government to admit a number of letters that he had sent to Hill because the admission of such letters violated the marital privilege. Crews and Hill, however, were never married.

[20] Because Crews did not raise this issue before the District Court, we review the admission of Warfield's expert testimony regarding cellular phones in the drug trade for plain error. *See DeMuro*, 677 F.3d at 557.

[21] Warfield testified that Boost phones are preferred by drug dealers because no credit check or identification is required when purchasing the phones.

11

Crews stipulated to Warfield's expertise, which was sensible, given the officer's background and experience. The belated effort to claim error because of Warfield's testimony is unpersuasive. *Cf. United States v. Davis*, 397 F.3d 173, 178-79 (3d Cir. 2005) (holding that experts can testify based on background and experience and that expert opinion need not be based on objective or scientific data).

G.    *The Drug Test*[22]

Invoking Federal Rule of Evidence 702, Crews argues that the District Court erred in admitting evidence of the drug test results because the government failed to introduce evidence that the test was reliable and that the probation officer was trained to administer such a test. Even if Rule 702 were applicable here, however,[23] Crews did not raise this issue before the District Court, so he must prove that evidence of the drug test results prejudiced him. *See United States v. Olano*, 507 U.S. 725, 740 (1993) (holding that the defendant has the burden of proving prejudice in plain-error review). He cannot make that showing, however, given the drugs located in the subsequent search of his home and his own admissions regarding his use of marijuana and exposure to cocaine.[24]

---

[22] Because Crews did not raise this issue before the District Court, we review the admission of the drug test results for plain error. *DeMuro*, 677 F.3d at 557.

[23] There is an argument that the probation officer was testifying as a fact witness, but we need not answer that question.

[24] Crews also argues that the evidence presented at trial was insufficient to convict him. In light of the controlled-purchase evidence, the probation meeting interview, the failed drug test, and the evidence obtained in the search of Crews's home, that argument is plainly without merit.

H.    *Sentencing*[25]

Crews argues that the District Court erred in determining that he was a career offender. Crews specifically argues that his prior conviction for resisting arrest in the Pennsylvania Court of Common Pleas was not a crime of violence that would qualify him for application of the career offender provision. We have already held, however, that a conviction for resisting arrest under Pennsylvania law, 18 Pa Cons. Stat. Ann. § 5104, constitutes a crime of violence. *See United States v. Stinson*, 592 F.3d 460, 466-67 (3d Cir. 2010) (holding that, under Pennsylvania law, a "prior conviction for resisting arrest, a categorical crime of violence, [qualifies as a] predicate offense [in a defendant's] designation as a career offender").[26] Thus, Crews's arguments with respect to his sentencing are foreclosed.

---

[25] We review the "District Court's interpretation of the Sentencing Guidelines *de novo*." *United States v. Wood*, 526 F.3d 82, 85 (3d Cir. 2008).

[26] Crews argues that the District Court erred in failing to apply the Fair Sentencing Act of 2010 ("FSA") when sentencing him. The District Court did commit a procedural error by initially calculating Crews's Career Offender guideline range based on the pre-FSA statutory terms of imprisonment for distribution of crack cocaine. *See Dorsey v. United States*, 132 S. Ct. 2321 (2012); *United States v. Dixon*, 648 F.3d 195, 203 (3d Cir. 2011) (holding that offenders, like Crews, who committed an offense prior to the enactment of the FSA, but were sentenced after the enactment of the FSA, must be sentenced based on the more lenient post-FSA penalties). The FSA reduced the statutory maximum term of imprisonment applicable to Crews from life to 40 years because Crews was not held accountable for 280 grams or more of crack cocaine. S*ee* 21 U.S.C. § 841(b)(1)(B). The advisory guidelines range applicable to Crews as a Career Offender was thus reduced from 360 months to life in prison to 262 to 327 months. *See* U.S.S.G. § 4B1.1(b). However, the error was harmless. The District Court granted Crews a U.S.S.G. § 4A1.3 downward departure of one criminal history category. The District Court then considered what Crews's Career Offender guideline calculation would be if he received the benefit of the FSA's statutory changes. The District Court imposed a sentence  based on neither the pre-FSA nor post-FSA career offender provisions linked to

13

## III. Conclusion

For the foregoing reasons, we will affirm the conviction and sentence imposed by the

District Court.

---

the statutory maximum prison terms for crack cocaine offenders, but instead based on the statutory penalties applicable to powder cocaine offenders in order to avoid any unwarranted sentencing disparities. Significantly, the FSA did not alter the penalties associated with the distribution of powder cocaine. Thus, the initial procedural error was harmless because the record clearly shows that the District Court imposed a sentence that was not premised at all upon the otherwise applicable advisory guidelines range. *See United States v. Langford*, 516 F.3d 205, 218 (3d Cir. 2008). Accordingly, we will not remand because, based on a review of "the record as a whole, … the error did not affect the district court's selection of the sentence imposed." *Williams v. United States*, 503 U.S. 193, 203 (1992) (citing Fed. R. Crim. Pro. 52(a)).