**UNITED STATES**

v.

**Joseph Vito MASTRONARDO, Jr.**

**Criminal Action No. 12–388–01.**

United States District Court, E.D. Pennsylvania.

Dec. 13, 2013.

Jason Bologna, John S. Han, Kelly Pearson, for United States.

John W. Morris, Dennis J. Cogan, Christopher B. Warren, Anthony J. Petrone, Lisa A. Mathewson, Christian J. Hoey, Giovanni Campbell, Francis Recchuiti, Louis R. Busico, Dennis P. Caglia, Robert Kerry Kalmbach, Thomas Alvin Bello, William M. McSwain, Marc Robert Stein-

berg, William T. Cannon, William Brennan, for Joseph Vito Mastronardo, Jr.

## MEMORANDUM

DuBOIS, District Judge.

### I. INTRODUCTION

On August 1, 2012, a federal grand jury in the Eastern District of Pennsylvania named defendant Joseph Vito Mastronardo, Jr. ("Mastronardo" or "defendant") in a twenty-three count indictment. The Indictment charges defendant with, *inter alia*, participation in a racketeering conspiracy in violation of 18 U.S.C. § 1962(d), managing an illegal gambling business in violation of 18 U.S.C. § 1955, and money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i).

Presently before the Court is defendant Mastronardo's Motion to Suppress Evidence. In this motion, defendant seeks to suppress the fruits of the August 19, 2009 search of his vehicle, which defendant reported stolen and was recovered by the police.

The Court conducted a three-day evidentiary hearing on all pending motions—including the instant motion to suppress—from September 30, 2013 through October 2, 2013. Oral argument was held on November 18, 2013. This Memorandum constitutes the Court's findings of fact and conclusions of law with respect to defendant's Motion to Suppress Evidence seized from his vehicle. For the reasons that follow, the motion is denied.

### II. FINDINGS OF FACT

#### A. Theft of Mastronardo's Cadillac

On July 18, 2009, two cars were broken into and a third was stolen in Upper Moreland Township, Pennsylvania. The thieves stole credit cards and I.D. cards from the vehicles. While driving the stolen car, the thieves crashed in Abington Township, Pennsylvania, abandoned the damaged vehicle, and stole defendant's Cadillac, which was parked nearby. On July 28, 2009, Detective Brian McCauley—who routinely handled burglary, robbery, and drug investigations for the Upper Moreland Police Department—was assigned to investigate the crimes. Using surveillance videos from establishments where the stolen credit cards were used, Detective McCauley identified Raymond Rigous as a suspect.

On August 14, 2009, Detective McCauley interviewed Rigous at his residence and the police station. Rigous admitted to the thefts and identified Huett Johnson as his accomplice. Rigous also confessed that he had crashed the vehicle he stole from Upper Moreland in Abington Township, Pennsylvania before stealing a second car that night. Defendant had reported his car stolen on July 31, 2009.

After the interview, on August 14, 2013, Rigous led police to the location of (1) the Mastronardo vehicle, which he had abandoned in Philadelphia, and (2) credit cards stolen from one of the Upper Moreland vehicles. On August 15, 2009, the Upper Moreland Police Department took control of Mastronardo's vehicle, and Detective McCauley called Mastronardo to notify him that his vehicle had been recovered. Detective McCauley asked Mastronardo what items might be missing and advised him that the vehicle would be held and processed for evidence of the crimes committed by Rigous and Johnson.

Detective McCauley decided, with Rigous's consent, to record communications between Rigous and Johnson. Detective McCauley was joined by Detective Sergeant John Becker of the Hatboro Bor-

ough Police Department[1] in investigating Johnson—a resident of Hatboro, Pennsylvania—and to certify the use of consensual recordings in the investigation. On August 18, 2009, Detective McCauley and Sergeant Becker recorded a conversation between Rigous and Johnson during which Johnson admitted to participating in the car thefts on July 18, 2009. On the same day, Detective McCauley obtained and executed a search warrant on Johnson's residence. While searching Johnson's apartment, Detective McCauley recovered some of the stolen property from defendant's Cadillac and drug paraphernalia that suggested Johnson might be a drug dealer, including empty pill bottles in plastic bags.

On August 19, 2009, Detective McCauley and Sergeant Becker searched defendant's Cadillac for evidence of the crimes committed by Rigous and Johnson, including stolen credit cards and I.D. cards. The vehicle was dusted for fingerprints. During the search, Detective McCauley observed a laminated sheet of telephone numbers on top of a pile of papers. The laminated sheet was partially covered by a box of golf balls, but the contents of the laminated sheet—a list of names and phone numbers—were in plain view. Detective McCauley believed the laminated sheet could be related to Johnson's drug activity because, in the past, Detective McCauley had encountered tally sheets kept by drug dealers with lists of clients and suppliers.

Detective McCauley removed and photographed the entire stack of papers found in Mastronardo's vehicle, including the laminated sheet, a phone bill addressed to Mastronardo, and a day planner with attached notes. Detective McCauley took the photographs to be thorough and to avoid any argument at the trial of Rigous and Johnson that he had selectively removed and photographed documents recovered from the vehicle.

## B. Investigation of Joseph Vito Mastronardo, Jr.

Defendant was arrested June 5, 2006 by the Montgomery County Detectives Bureau for bookmaking and conspiracy to commit bookmaking. Police collected evidence using four wiretaps and a series of search warrants. The 2006 investigation revealed, *inter alia,* five facts that corroborated information obtained in the 2009 investigation: (1) the identity of codefendant Edward Feighan as a sub-bookmaker for defendant Mastronardo, (2) the location of an office used to conduct bookmaking activities, (3) the existence of a website at betroma.com used to collect wagers, (4) the contents of bookmaking records, and (5) the existence of large sums of currency in hidden compartments throughout defendant's residence.

Defendant plead guilty to the charges of bookmaking and conspiracy to commit bookmaking, and he was sentenced to two years of intermediate punishment and five years of probation. Defendant's probation terms allowed the Montgomery County Adult Parole and Probation Department to conduct warrantless searches of his person, place of residence, or vehicle on the basis of reasonable suspicion. Gov't Ex. 31. After defendant's conviction and sentence, police concluded that defendant's bookmaking organization might resume operations because its website displayed the message "sorry for the inconvenience, we will be back up shortly."

In October 2008, Detective Vinter met with Confidential Source One, who reported that he had placed bets with codefendant Feighan by telephone. Confidential Source One provided police with Feighan's phone number and claimed that Feighan

---

**1.** The date Sergeant Becker joined the investigation is not clear from the record.

paid gambling winnings and collected gambling debts on a weekly basis at the Century House in Hatfield, Pennsylvania. Detective Vinter memorialized the conversation in a police report dated February 17, 2009.

In May 2009, Confidential Source One reported that Feighan continued to take bets from individuals in Montgomery County and that Feighan had bragged about a group of bettors from the Lehigh Valley Country Club whose weekend wagers could escalate above $50,000. On at least one occasion, Confidential Source One heard Feighan say that he had money to deliver to defendant Mastronardo at the Cedarbrook Country Club. In a third meeting with Detective Vinter during the second week of August 2009, Confidential Source One stated that defendant's bookmaking organization had moved its website to ExclusiveWager.com and provided police with his user name and password. Detective Vinter memorialized both conversations in police reports dated August 17, 2009.

Police corroborated several facts provided by Confidential Source One. Police knew from the previous investigation that Mastronardo had worked with Feighan before and that he was a member of the Cedarbrook Country Club in 2006. Second, police used visual surveillance to confirm that Feighan made regular trips to the Century Club in Hatfield, Pennsylvania. Lastly, police verified that the website, username, and password provided by Confidential Source One were operational. On August 18, 2009, Detective Vinter filed applications to obtain the Toll Records on Feighan's cellular telephone and for authorization to install a GPS tracking device on Feighan's vehicle. Both applications were approved by the Montgomery County Court of Common Pleas.

On August 24, 2009, Sergeant Becker told Detective Vinter that Detective McCauley had photographed the contents of defendant's car.[2] On August 25, 2009, Detective Vinter called Detective McCauley and requested the photographs. Detective McCauley sent copies of the photographs as requested, although he never learned the significance of the photographs to the Mastronardo investigation. At the time he took the pictures, Detective McCauley did not know defendant was the subject of an ongoing investigation for illegal bookmaking in Montgomery County, and he found nothing in the photographs that implicated Mastronardo in any criminal conduct. Detective Vinter examined the photographs in connection with the investigation of Mastronardo's illegal gambling business.

## III. LEGAL STANDARD

 The Fourth Amendment secures people in their persons, homes, papers, and effects against unreasonable searches and seizures. U.S. Const. amend. IV. As a general matter, searches and seizures must be based upon probable cause and executed pursuant to a warrant. *See, e.g., Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). "Searches conducted outside the judicial

2. Sergeant Becker was not called to testify at the evidentiary hearing, and the extent of his knowledge of the Mastronardo investigation is unclear. Given the testimony of Detective McCauley about his knowledge of defendant, *see* Tr. Pretrial Mots. Hr'g Day 3 at 218–27, the testimony of Detective Vinter about his contact with Sergeant Becker, *id.* at 19–21, and the early stage of the Mastronardo investigation, the Court finds that neither Detective McCauley nor Sergeant Becker thought the pictures were incriminating of defendant, and the photographs were not taken in order to facilitate the investigation of defendant's alleged illegal bookmaking.

process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Id.*

■ "As a general rule, the burden of proof is on the defendant who seeks to suppress evidence. However, once the defendant has established a basis for his motion, *i.e.,* the search or seizure was conducted without a warrant, the burden shifts to the government." *United States v. Johnson,* 63 F.3d 242, 245 (3d Cir.1995). "On a motion to suppress, the government bears the burden of showing that each individual act constituting a search or seizure under the Fourth Amendment was reasonable." *United States v. Ritter,* 416 F.3d 256, 261 (3d Cir.2005); *see also United States v. Coward,* 296 F.3d 176, 180 (3d Cir.2002). The applicable burden is proof by a preponderance of the evidence. *United States v. Matlock,* 415 U.S. 164, 178 n. 14, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974).

## IV. CONCLUSIONS OF LAW

### A. Search of Mastronardo's Cadillac by Detective McCauley and Sergeant Becker

■ The Court concludes that the government has proven by a preponderance of the evidence that the pictures were taken pursuant to the automobile exception. "If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment thus permits police to search the vehicle without more." *Pennsylvania v. Labron,* 518 U.S. 938, 940, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996). Probable cause can be inferred from "the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide the fruits of his crime." *United States v.*

*Hodge,* 246 F.3d 301, 305–06 (3d Cir.2001) (internal citations and quotations omitted). "A court is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of the offense." *Id.*

■ The Court concludes that Detective McCauley and Sergeant Becker had probable cause to believe that evidence of the crimes of Rigous and Johnson would be found in defendant's Cadillac. Rigous admitted to the crimes of July 18, 2009, and he led police to the location where he had abandoned defendant's vehicle in Philadelphia. Police then intercepted a conversation in which Johnson also admitted to the crimes. Because defendant's vehicle was the last car Rigous and Johnson stole, evidence of all the crimes they committed on July 18, 2009 could have been found in defendant's Cadillac. Although Detective McCauley had previously seized some of the stolen property at Johnson's residence, many of the credit cards, ID cards, and other property remained unrecovered. Detective McCauley also found drug paraphernalia during the search of Johnson's home and suspected he was engaged in drug dealing. Under the totality of the circumstances, the police had probable cause to search defendant's vehicle for Rigous and Johnson's fingerprints, any remaining stolen property, including stolen credit cards and ID cards, and evidence of Johnson's drug activity.

■ The Court concludes that the photographs of defendant's papers were within the scope of that search because Detective McCauley had reason to believe that the laminated sheet was evidence of Johnson's drug activity. McCauley had found drug paraphernalia at Johnson's residence, suspected he could be a drug dealer, and saw the list of names and phone numbers on top of a pile of papers on the floor of the vehicle. In Detective McCauley's ex-

perience, drug dealers would often keep tally sheets of their buyers and suppliers. To avoid the accusation that he selectively photographed evidence, Detective McCauley took pictures of the entire stack of papers, including a telephone bill addressed to Mastronardo. Detective McCauley believed the phone bill was necessary to provide context for the laminated sheet in any future prosecution of Johnson for drug activity.

 Defendant argues that the search of his Cadillac violated the Fourth Amendment because it was a mere pretext to examine his papers. The Court rejects this argument. The subjective motivation of police officers is of no legal significance when their conduct is objectively reasonable. *Horton v. California*, 496 U.S. 128, 138–39, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990) (stating that "the fact that an officer is interested in an item of evidence and fully expects to find it in the course of a search should not invalidate its seizure if the search is ... valid"). The search of defendant's Cadillac for evidence of the crimes of Rigous and Johnson was objectively reasonable. If Detective McCauley or Sergeant Becker knew the documents were incriminating evidence of defendant's crimes, then the pictures would have been validly seized under the plain view doctrine.[3] Regardless of their subjective intent, Detective McCauley and Sergeant Becker lawfully photographed the papers during their search of defendant's automobile.

### B. Search of the Photographs by Detective Vinter

The government must also justify the subsequent examination of the photo-

graphs by Detective Vinter to investigate defendant Mastronardo because the pictures, at the time of his examination, were not incriminating. The government argues that photographing the documents does not "seize" them within the meaning of the Fourth Amendment, and thus Detective Vinter's examination of the photographs should not be subject to Fourth Amendment scrutiny. The Court concludes (1) photographing the documents was not a seizure and (2) the subsequent examination of the photographs by Detective Vinter constituted a second search that must be reasonable under the Fourth Amendment.

 Photographing documents is not a seizure because it does not meaningfully interfere with a possessory interest in the documents. *See Arizona v. Hicks*, 480 U.S. 321, 324, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987). However, repeated review of a non-incriminating document can constitute a separate search if the review is not within the "collective knowledge" of the officers conducting the search. *See United States v. Menon*, 24 F.3d 550, 561–62 (3d Cir.1994). At a minimum, multiple police officers on the premises may review a document during the execution of a search warrant to determine if the document is incriminating. *See id.* Whether officers at the scene can request information from outside sources during the search is an open question in the Third Circuit. *Id.*

 In this case, neither Detective McCauley nor Sergeant Becker thought the photographs incriminated defendant

---

**3.** The Court finds that neither officer thought the photographs were incriminating evidence of defendant Mastronardo's conduct, so the plain view doctrine is inapplicable. The Court further finds credible the testimony of

Detective McCauley that he photographed the documents in connection with his investigation of Johnson's drug activity and that he was unaware that any of the photographs implicated defendant Mastronardo.

Mastronardo. Only after Detective Vinter examined the photographs did the police realize that the documents might be evidence of Mastronardo's illegal gambling business. The question, then, is whether Detective Vinter's examination of the photographs was within the collective knowledge of the officers conducting the search of defendant's vehicle. The Court concludes that it was not. Detective Vinter was a member of a different police department, worked on a separate investigation, and examined the photographs at least one week after they were taken in connection with his investigation of Mastronardo and not to assist in the investigation and prosecution of Rigous and Johnson. Therefore, the Court concludes that Detective Vinter's examination of the photographs is a separate search and must be reasonable.

■ The Court concludes that the government has proven by a preponderance of the evidence that Detective Vinter's search of the photographs was reasonable. Because defendant was on probation and subject to warrantless searches, Detective Vinter required only reasonable suspicion, not probable cause and a warrant, to conduct the search. *United States v. Knights*, 534 U.S. 112, 121–22, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001) ("When an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity ... an intrusion on the probationer's significantly diminished privacy interests is reasonable."). It matters not that this search was conducted by a police officer and not the Montgomery County Adult Parole and Probation Department. *United States v. Foley*, 218 Fed.Appx. 139, 142 (3d Cir.2007) ("Law enforcement officers do not need probable cause or a warrant before searching parolees and premises they are on—reasonable suspicion will suffice."); *United States v. Replogle*, 176 F.Supp.2d 960, 969 (D.Neb.

2001). To ascertain whether reasonable suspicion exists to justify the search of a probationer, courts must consider "the totality of the circumstances to determine whether the 'officer has a particularized and objective basis for suspecting legal wrongdoing.'" *United States v. Williams*, 417 F.3d 373, 376 (3d Cir.2005) (quoting *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002) (internal quotations omitted)).

The Court concludes that Detective Vinter's search of the photographs was based on reasonable suspicion. Detective Vinter knew of defendant's guilty plea for illegal bookmaking in 2006, and he had received a tip from Confidential Source One that Mastronardo was linked to Feighan's continued bookmaking activity. Detective Vinter had ample information to determine that the source was reliable. Confidential Source One placed bets with Feighan—a convicted co-conspirator of defendant—using a website that matched the modus operandi of the illegal gambling business in 2006. Confidential Source One also identified the Cedarbrook Country Club as the location of an exchange of money between Feighan and Mastronardo, which was corroborated by information from the 2006 investigation of defendant. Thus, under the totality of the circumstances, Detective Vinter's search of the photographs of defendant's papers was reasonable under the Fourth Amendment.

## V. CONCLUSION

For the foregoing reasons, the Court concludes that the searches challenged in the instant motion to suppress were reasonable under the Fourth Amendment. Defendant's Motion to Suppress Evidence is denied, and an appropriate order follows.

## ORDER

**AND NOW,** this 13th day of December, 2013, upon consideration of defendant Joseph Vito Mastronardo, Jr.'s Motion to Suppress Evidence (Document No. 307, filed August 9, 2013), Revised Memorandum in Support of Joseph V. Mastronardo's Motion to Suppress Evidence (Document No. 310, filed August 11, 2013), Government's Response Motion Addressing the 2009 Search of Joseph Vito Mastronardo, Jr.'s Stolen Vehicle (Document No. 323, filed August 30, 2013), Defendant's Reply to Government's Response to Motion to Suppress Evidence (Document No. 346, filed September 20, 2013), Government's Surreply Addressing Motion to Suppress Evidence from Search of Joseph Vito Mastronardo, Jr.'s Car (Document No. 354, filed September 27, 2013), Government's Proposed Findings of Fact and Conclusions of Law (Document No. 389, filed October 18, 2013), and Defendants' Proposed Findings of Fact and Conclusions of Law (Document No. 403, filed November 1, 2013), **IT IS ORDERED,** based on the findings of fact and conclusions of law set forth in the attached Memorandum dated December 13, 2013, that defendant Joseph Vito Mastronardo, Jr.'s Motion to Suppress Evidence is **DENIED.**

**IT IS FURTHER ORDERED** that this denial is **WITHOUT PREJUDICE** to defendant's right to seek reconsideration if warranted by the evidence at trial.