NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-1157
_____

UNITED STATES OF AMERICA

v.

ERIC LAMAR WORMSLEY,

Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-16-cr-00018)
District Judge:  Hon. Nora B. Fischer

_____

Submitted Under Third Circuit LAR 34.1(a)
September 11, 2017

Before:  CHAGARES, JORDAN, and NYGAARD, *Circuit Judges.*

(Filed: September 20, 2017)
_____

OPINION*
_____

---

\* This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

JORDAN, *Circuit Judge*.

Eric Wormsley appeals the denial of his motion to suppress evidence obtained during a search of his residence. The District Court denied the motion on the grounds that the search was legally justified because the probation officers who conducted the search had reasonable suspicion. Wormsley disputes that conclusion, but we agree with it and will affirm.

## I.    BACKGROUND

Wormsley is a convicted felon with a history of drug and firearms convictions. He was on probation following a simple assault conviction in Pennsylvania's Court of Common Pleas in Allegheny County. The Allegheny County Department of Probation was responsible for his probation. In June 2014, Wormsley was placed under the specific supervision of Probation Officer Daniel Sommers.

The conditions of Wormsley's probation required him to "report in at a minimum [of] once per month[,]" which was supposed to occur either by Wormsley calling in or by Officer Sommers visiting his residence. (App. Vol. 2 ("App.") at 46; *see also* App. at 36 (probation agreement form indicating that Wormsley was required, as a condition of his probation, to "report to [his] assigned probation officer as required").) But "months went by" when Wormsley did not report to Sommers as required. (App. at 46.) Officer Sommers visited Wormsley's residence three or four times before February 2015, but Wormsley was not present on any of those occasions. In January 2015, Wormsley telephoned Sommers and acknowledged that he needed to report to the probation office. Despite that acknowledgment, Wormsley never checked in as required.

2

On February 6, 2015, Sommers and a fellow probation officer, Rich Donnelly, decided to visit Wormsley's residence. They knocked on the door but left when no one answered. Approximately a half hour later, they were driving down another street that had a view of Wormsley's house, and they saw an individual who appeared to be Wormsley leave the house, so they drove back to speak with him. When they arrived, they saw that the front door was open. The person they had seen leaving the house turned out to be Wormsley's teenaged son, who claimed to have just returned home. As the officers spoke with him on the sidewalk, they heard someone shut and deadbolt the front door.

The officers immediately knocked on the door and heard "lots of quick ... sounds of feet" on the second floor, leading Sommers to believe that there were "multiple individuals inside the house." (App. at 53.) An adult female voice called from inside the residence, saying "we'll be down in a minute." (App. at 54.) Sommers recognized the voice as belonging to Wormsley's wife.

Two to three minutes later, Wormsley answered the door "breathing ... heavily[.]" (App. at 54, 56.) Sommers asked him who else was in the residence. Even though Wormsley's wife had just called out to the officers, Wormsley said "no one." (*Id*. at 54.) When Sommers then asked who shut the front door, Wormsley admitted others were home by saying that one of his sons may have done it. Shortly after, Wormsley confessed that he was not alone and that his wife and children were upstairs.

While Officer Sommers stayed with Wormsley and the teenaged son on the first floor, Officer Donnelly went to the second floor "to make sure for officer safety that no

3

one was up there [who] may have possessed a weapon or anything along those lines[.]" (App. at 55.) A few minutes later, Donnelly came back and told Sommers that he had seen a scale and a box of empty stamp bags in a bedroom.

With the discovery of those items and with his knowledge of Wormsley's past involvement in drug activities, Sommers believed that enough evidence of narcotics distribution existed to justify a search. Since the officers were required to receive approval for searches, Sommers placed a call to his supervisor requesting permission to conduct a search. The supervisor granted permission. When Wormsley overheard Sommers acknowledging on the phone that he had permission to search, he directed the officers to a firearm and a quantity of heroin in a child's bedroom located in the rear of the house.

Wormsley was indicted by a grand jury on three counts. Count 1 charged him with possession with intent to distribute heroin, in violation of 21 U.S.C §§ 841(a)(1) and 841(b)(1)(C); Count 2 charged him with possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i); and Count 3 charged him with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). Under a conditional plea agreement, Wormsley pled guilty to Counts 1 and 2, and Count 3 was dismissed. Under the conditional plea agreement, Wormsley reserved the right to appeal the denial of his motion to suppress. Prior to the plea, Wormsley moved to suppress "all evidence obtained as a result of the illegal search and/or seizure of his residence and all evidence derived therefrom," on the grounds that his residence was searched without the requisite reasonable suspicion. (App. at 16-17.)

4

At the suppression hearing, the government introduced testimony from Officer Sommers and emphasized Wormsley's deception, evasive conduct, and violation of probation conditions. Wormsley did not present any witnesses of his own. The District Court denied the motion to suppress, reasoning that the probation officers possessed reasonable suspicion and were fully justified to enter and then search Wormsley's residence. Wormsley appealed.

## II. DISCUSSION[1]

We review the District Court's "denial of a suppression motion for clear error as to the underlying facts, but exercise plenary review as to its legality in light of the district court's properly found facts." *United States v. Jackson*, 849 F.3d 540, 544 (3d Cir. 2017) (quoting *United States v. Coles*, 437 F.3d 361, 365 (3d Cir. 2006)). In order to conduct a search of a probationer, the government need only have "reasonable suspicion" that he has engaged in criminal activity or has violated the terms of probation. *United States v. Baker*, 221 F.3d 438, 443-44 (3d Cir. 2000); *see also Griffin v. Wisconsin*, 483 U.S. 868, 873-76 ("A State's operation of a probation system ... presents 'special needs' ... that may justify departures from the usual warrant and probable-cause requirements. ... A warrant requirement would interfere to an appreciable degree with the probation system ... ."). Reasonable suspicion is a "commonsense, nontechnical" concept that deals with "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Ornelas v. United States*, 517 U.S. 690, 695 (1996)

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

5

(internal quotation marks omitted). "To decide whether 'reasonable suspicion' exists, we consider the totality of the circumstances to determine whether the 'officer ha[d] a particularized and objective basis for suspecting legal wrongdoing[.]'" *United States v. Williams*, 417 F.3d 373, 376 (3d Cir. 2005) (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)).

Wormsley argues that the District Court erred when it concluded that the probation officers' search of his residence was supported by reasonable suspicion. We disagree. As explained above, throughout the course of Wormsley's probation, he had repeatedly failed to check in with Sommers as required by the terms of his probation, and had consistently evaded Sommers's attempts to check on him. Concern raised by what began to look like evasive behavior was heightened by the strange behavior exhibited by Wormsley and members of his family on the day Officers Sommers and Donnelly appeared at their door. From the time the officers arrived, they observed a series of increasingly suspicious things.

Wormsley and members of his family appeared intent on deception. Wormsley's son claimed to have just arrived home, despite the fact that the officers saw him exit the house and leave the door ajar. Next, after hearing the scurrying of feet inside, the officers saw that when Wormsley answered the door he was breathing heavily, as though he had been running. Wormsley claimed that he was the only one in the house, even though the officers had just heard a woman respond when they knocked on the door, they heard other sounds indicating that Wormsley was not alone, and Wormsley admitted one or more of his sons was home. *See United States v. Mabry*, 728 F.3d 1163, 1169 (10th Cir.

6

2013) (relying in part on evasive behavior exhibited by a parolee's girlfriend to support a finding of reasonable suspicion).  Taken together, those facts suggest that Wormsley, with the aid of his family, was attempting to hide something before he answered the door.

In sum, there is enough evidence to support the conclusion that the officers' search was based on reasonable suspicion.

III.     **CONCLUSION**

For the foregoing reasons, we will affirm the District Court's decision denying Wormsley's request to suppress the evidence at issue and, consequently, the judgment of conviction.