**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-2720
_____

RASHIED K. GOODWIN

v.

DETECTIVE EDWARD CONWAY;
DETECTIVE C. LISSNER;
DETECTIVE RANDY SIDORSKI;
JOHN DOES 1-10, unknown supervising
officers in the Somerset Prosecutor's Office

Detective Edward Conway; Detective C. Lissner;
Detective Randy Sidorski,
Appellants
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 3-12-cv-01040)
District Judge:  Hon. Freda L. Wolfson
_____

Argued March 14, 2016

Before:  FUENTES[*], CHAGARES, and RESTREPO, *Circuit Judges*

(Opinion Filed:  September 12, 2016)


Eric S. Pasternack        **[ARGUED]**
Lisa A. Puglisi
Office of Attorney General of New Jersey
P.O. Box 112
25 Market Street
Richard J. Hughes Justice Complex
Trenton, NJ 08625

    *Counsel for Appellants*

Catherine M. Aiello        **[ARGUED]**
Natalie J. Kraner
Megan B. Treseder
Lowenstein Sandler LLP
65 Livingston Avenue
Roseland, NJ 07068

    *Counsel for Appellee*

_____

OPINION OF THE COURT

_____

_____

[*] Honorable Julio M. Fuentes assumed senior status on July 18, 2016.

FUENTES, *Circuit Judge*.

Rashied Goodwin was arrested pursuant to a warrant for allegedly selling heroin to an undercover police officer. A grand jury indicted him but the charges were eventually dropped. Goodwin then brought this 42 U.S.C. § 1983 lawsuit for false imprisonment and malicious prosecution against the three detectives involved in securing his arrest warrant. He claims that the detectives submitted a false warrant application because they knew or should have known that he was in jail at the time of one of the undercover drug deals. He argues that his incarceration was evident from a booking sheet the detectives had when they applied for his arrest warrant. The detectives moved for summary judgment and asserted a qualified immunity defense.

The District Court denied the detectives' motion, holding that there was a genuine dispute as to whether the detectives possessed the booking sheet when they submitted the warrant application, which precluded granting summary judgment on the issue of whether the detectives had probable cause to arrest Goodwin. According to the District Court, the detectives' qualified immunity defense also hinged on this factual dispute.

At oral argument before this Court, defense counsel conceded that the detectives were indeed aware of the booking sheet before submitting the warrant application. The only issue we must decide is whether that booking sheet and any inferences derived therefrom preclude a finding of probable cause. We conclude that they do not. Despite the booking sheet, the detectives had probable cause when they applied for Goodwin's arrest warrant, and they are therefore

3

entitled to qualified immunity.  Accordingly, we will reverse the order of the District Court.

## I.

### A.

In late September 2009, the Somerset County Organized Crime and Narcotics Task Force learned from a confidential informant that an individual known as "Snipe" was selling heroin in the Watchung/North Plainfield area of New Jersey.  At some point during the week of September 27, 2009, Detective Lissner, acting undercover, accompanied the confidential informant to buy heroin from Snipe in a Sears parking lot in Watchung at approximately 3:30 p.m.  Snipe approached Lissner's car and handed the drugs to the confidential informant through the front passenger side window.  Lissner asked Snipe if he could make future buys from him without the confidential informant present.  Snipe said that was fine and gave Lissner his cell phone number.  In his follow-up report, Detective Lissner described Snipe as a "black male."[1]

Through a series of phone calls and text messages, Detective Lissner set up a second buy from Snipe on October 16, 2009, again in the Sears parking lot.  This time, Snipe sat down in the front passenger seat of Lissner's car and handed Lissner the drugs.  Following the exchange, Snipe drove out of the parking lot and headed towards Plainfield.  Detective Lissner provided no physical description of Snipe in his follow-up report.

---

[1] App. 334.

Two other members of the Task Force, Detective Conway and Detective Sidorski, observed the drug deals from afar.[2]  No pictures or videos of Snipe were taken.  The most detailed physical description of Snipe is found in Detective Conway's investigation report of the first buy: "black male, dark complexion, approximately 5'8, thin build, and approximately 30 years old."[3]

The Task Force worked to identify "Snipe."  They contacted Lieutenant O'Brien in the Plainfield Police Department, who advised the detectives that he knew "Snipe" as Rashied Goodwin.  In his deposition, O'Brien testified that he had previously interacted with Goodwin "on the street," and that the only person he knew who uses the alias "Snipe" is Goodwin.[4]

On November 13, 2009, Detective Conway obtained a photograph of Goodwin from the Union County jail.  His investigation report indicates that he reached out to staff at the jail because he learned that Goodwin had recently been arrested and was being held there.  Detective Conway showed a copy of Goodwin's photograph to Detective Lissner, who positively identified Goodwin as the "Snipe" who sold him drugs.  Lissner then initialed and dated the photograph to confirm that he identified Goodwin as Snipe.  In his deposition, Lissner testified that he "immediately recognized" the individual in the photograph as the person from whom he

---

[2] Detective Conway observed both drugs deals, and Detective Sidorski observed the second drug deal.  App. 332-38; App. 326 ¶ 61.

[3] App. 333.

[4] App. 256-57 (O'Brien Dep. 23:20-21, 25:2-5).

bought drugs, and that he would not have initialed the photograph unless he was "a hundred percent sure" about the identification.[5]

The detectives prepared an affidavit of probable cause for Goodwin's arrest. The affidavit itself refers only to the second drug buy on October 16, 2009. But the affidavit was submitted with a packet of supporting documents that included, among other things: (1) the detectives' investigation reports describing the first and second drug buys, (2) a supplementary investigation report explaining that the Plainfield Police Department indicated "Snipe" may be Rashied Goodwin's alias and that Detective Lissner positively identified a photograph of Goodwin as Snipe, and (3) a copy of the photograph of Goodwin with Detective Lissner's initials.

On November 25, 2009, a warrant was issued for Goodwin's arrest. Because Goodwin was incarcerated on other charges at the time, Detective Conway faxed the arrest warrant to Union County jail as a detainer. Goodwin was unaware of these charges until the end of December 2009, when he was released from custody and then immediately re-arrested. In January 2010, a grand jury returned an indictment for Goodwin, charging him with knowingly and purposefully distributing heroin, and with distributing heroin within 1,000 feet of a school.

Some time after the indictment was issued, Goodwin told his public defender that he had been incarcerated from

---

[5] App. 153 (Lissner Dep. 119:3-5, 20-22).

September 26, 2009 through [].[6]  At the time Goodwin made this claim, his attorney did not know the date of the first drug buy because the investigation reports included with the affidavit state only that the first buy occurred "during the week of September 27, 2009."[7]  Goodwin's attorney asked the prosecutor for the exact date of the first drug buy, explaining that it was "essential to [his] client's defense."[8]  The prosecutor refused to disclose this information, however, in an attempt to protect the identity of the confidential informant.  Rather than reveal the informant's identity, the prosecutor dropped the charges, and Goodwin was released from jail.  The parties now agree that the date of the first drug buy was [].

The dispute in this case concerns a booking sheet from the Plainfield Police Department in Goodwin's Somerset County case file.[9]  The booking sheet, which is undated, indicates that Goodwin was arrested and detained on September 26, 2009.[10]  Next to "Offender Disposition" is the word "JAILED," and next to "Time bailed or released" is a

---

[6] Per agreement of the parties, the Court has redacted certain dates which appear as "[ ]" in this opinion.

[7] App. 332.  The week of September 27, 2009 ran from Sunday, September 27 through Saturday, October 3.

[8] App. 302.

[9] Although defense counsel conceded that the detectives possessed the booking sheet at the time they submitted Goodwin's warrant application, it is unclear from the record whether the booking sheet was actually included in the application itself.  As we will later explain, this ambiguity is irrelevant.

[10] App. 340.

blank line.[11]  The booking sheet describes Goodwin as a black male, 31 years old, five feet six inches tall, and 150 pounds.[12] Notably, the sheet lists Goodwin's nickname as "Snipe."[13]

**B.**

Goodwin brought this § 1983 action against Detective Conway, Detective Lissner, and Detective Sidorski ("Defendants") for false imprisonment and malicious prosecution.  The crux of Goodwin's claim is that Defendants omitted from the warrant application "potential alibi" information derived from the Plainfield booking sheet regarding his incarceration on the date of the first drug buy. Neither party disputes that the "Snipe" who sold drugs to the undercover officer in the first drug buy was the same "Snipe" who sold drugs in the second drug buy.  Thus if Goodwin was incarcerated during the first drug buy, he could not have been the "Snipe" involved in the second drug buy.

Defendants moved for summary judgment, arguing that they had probable cause to arrest Goodwin and that, even if the court found no probable cause, they would still be entitled to qualified immunity.  The District Court denied Defendants' motion, and Defendants appealed.[14]

---

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction over this appeal under 28 U.S.C. § 1291. A "district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291

## II.

In this case, Defendants challenge the District Court's conclusion that the existence of a particular factual dispute precluded summary judgment on the issue of whether Defendants had probable cause to arrest Goodwin. In our view, this is a legal issue, not a factual one.[15] As we have explained, the factual dispute on which the District Court rested its opinion—whether Defendants possessed the Plainfield booking sheet before submitting Goodwin's warrant application—is no longer in dispute and indeed, has been resolved in Goodwin's favor. Nonetheless, because we conclude that the booking sheet was immaterial to the

---

notwithstanding the absence of a final judgment." *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). We may therefore decide an appeal challenging the district court's decision on whether the defendant's alleged actions violated a constitutional right or whether the right was clearly established. *Id.* at 528. We may not, however, decide an appeal challenging the district court's determination of "evidence sufficiency, *i.e.*, which facts a party may, or may not, be able to prove at trial." *Johnson v. Jones*, 515 U.S. 304, 313 (1995).

[15] *See, e.g.*, *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2019 (2014) ("[The defendants] contend that their conduct did not violate the Fourth Amendment and, in any event, did not violate clearly established law. Thus, they raise legal issues; these issues are quite different from any purely factual issues that the trial court might confront if the case were tried.").

9

probable cause determination, we will reverse the District Court's decision on the issue of qualified immunity.[16]

### III.

Public officials are entitled to qualified immunity unless their conduct violated a clearly established constitutional right.[17] Thus, to resolve a claim of qualified immunity, courts engage in a two-pronged inquiry: (1) whether the plaintiff has shown the violation of a constitutional right, and (2) whether the right was "clearly established" at the time of the official's conduct.[18] Here, Goodwin claims that Defendants arrested, detained, and initiated criminal proceedings against him without probable cause, in violation of the Fourth Amendment.[19] A finding of probable cause is therefore a complete defense to Goodwin's constitutional claims, and, accordingly, would entitle Defendants to qualified immunity.

"[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the

---

[16] We exercise plenary review of orders rejecting qualified immunity at the summary judgment stage. *Wright v. City of Philadelphia*, 409 F.3d 595, 599 (3d Cir. 2005).

[17] *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

[18] *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).

[19] The Fourth Amendment provides that people are "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, . . . and no Warrants shall issue, but upon probable cause . . . ." U.S. Const. amend. IV.

10

person to be arrested."[20] While the question of probable cause is generally left to the jury, a court may conclude that probable cause exists as a matter of law "if the evidence, viewed most favorably to [the nonmoving party], reasonably would not support a contrary factual finding."[21] "A 'common sense' approach [must be taken] to the issue of probable cause' and a determination as to its existence must be based on the 'totality of the circumstances.'"[22]

---

[20] *Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995).

[21] *Sherwood v. Mulvihill*, 113 F.3d 396, 401 (3d Cir. 1997).

[22] *Paff v. Kaltenbach*, 204 F.3d 425, 436 (3d Cir. 2000) (alterations in original) (quoting *Sharrar v. Felsing*, 128 F.3d 810, 818 (3d Cir. 1997)).

11

## A. False Arrest/Imprisonment

Goodwin's main contention is that Defendants submitted a false warrant application and had no probable cause to arrest him. Specifically, Goodwin claims that the booking sheet that Defendants had in their possession made clear that he was in jail when the first drug sale to Detective Lissner took place. We note, however, that the supporting documents attached to the affidavit of probable clause included a detailed description of the investigation of "Snipe," explained that another law enforcement officer indicated that "Snipe" may be Goodwin, and explained that Detective Lissner positively identified a photograph of Goodwin as "Snipe," the person from whom he bought drugs. This information was sufficient to lead a reasonable person to believe Goodwin had committed the offense.

The mere existence of an arrest warrant, however, does not shield an officer from liability for false arrest. In *Wilson v. Russo*,[23] we explained that "a plaintiff may succeed in a §1983 action for false arrest made pursuant to a warrant if the plaintiff shows, by a preponderance of the evidence: (1) that the police officer 'knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for the warrant;' and (2) that 'such statements or omissions are material, or necessary, to the finding of probable cause.'"[24] Omissions and misrepresentations are "material" if a reconstructed warrant application containing the alleged omissions and

---

[23] 212 F.3d 781 (3d Cir. 2000).
[24] *Id.* at 786-87 (quoting *Sherwood*, 113 F.3d at 399).

excising the alleged inaccuracies would no longer establish probable cause.[25]

Goodwin does not argue that Defendants deliberately or recklessly omitted the booking sheet itself from the warrant application. Rather, he argues that the existence of the booking sheet—which Defendants concede they possessed before submitting the application—provides evidence from which a reasonable jury could infer that Defendants *knew* or *should have known* that Goodwin was incarcerated on the date of the first drug buy. Goodwin argues that had this "potential alibi" information been included in the warrant application, it would have seriously undermined a finding of probable cause.

Goodwin's argument rests on two alternative assertions: (1) the booking sheet is plainly exculpatory, or (2) Defendants had a duty to further investigate Goodwin's whereabouts on the date of the first drug buy. Both are unconvincing.

First, the booking sheet was not plainly exculpatory. We have explained that "[a]n officer contemplating an arrest is not free to disregard plainly exculpatory evidence, even if substantial inculpatory evidence (standing by itself) suggests that probable cause exists."[26] In *Reedy v. Evanson*,[27] for example, we concluded that an officer disregarded plainly exculpatory evidence when he submitted an arrest warrant

---

[25] *Id.* at 789.

[26] *Id.* at 790 (quoting *Kuehl v. Burtis*, 173 F.3d 646, 650 (8th Cir. 1999)).

[27] 615 F.3d 197 (3d Cir. 2010).

application that charged the defendant with falsely reporting a crime, yet knowingly omitted from the application the fact that a very similar crime occurred shortly after the crime he claimed the defendant had fabricated.[28] We have also explained that, while a victim witness's positive identification is usually sufficient to establish probable cause, plainly exculpatory evidence, such as conclusive DNA evidence of the suspect's innocence, could outweigh that identification and preclude a finding of probable cause.[29]

Here, by contrast, all the booking sheet shows is that Goodwin was incarcerated beginning on September 26, 2009. It does not say when he was released. The fact that the "time released" line is left blank is of no moment, since the document itself is undated. The detectives in this case simply could not infer from the booking sheet itself that Goodwin remained incarcerated through [], the date of the first drug buy.

Thus the fact that Defendants were aware of this booking sheet is insufficient to show that Defendants submitted the warrant application with a reckless disregard for the "truth" that Goodwin could not have been Snipe. To the contrary, the booking sheet *supports* the connection between Goodwin and Snipe because it lists Goodwin's nickname as "Snipe." The physical description of Goodwin in the booking sheet also closely matches the physical description of Snipe in Detective Conway's investigation report. If anything, then, the booking sheet is *inculpatory*,

---

[28] *Id.* at 223.
[29] *Wilson*, 212 F.3d at 790.

14

and supports rather than undermines a probable cause determination.

Second, the booking sheet did not trigger a duty to further investigate Goodwin's release date. We have explained that the reliability of information provided to officials may sometimes be questionable enough to "put a reasonable official on notice that further investigation [is] necessary."[30] Even so, the official may still rely on the information unless the further investigation "would give rise to an obvious reason to doubt the accuracy of the information,"[31] so as to "render[] the [official's] reliance upon that information unreasonably reckless."[32]

In light of the information Defendants had at the time, there was no reason for them to further investigate Goodwin's release date. Another law enforcement officer unconnected to the investigation suggested that Snipe may be Rashied Goodwin, and Detective Lissner "immediately" made a positive photo identification of Goodwin. Goodwin makes much of the fact that Detective Lissner made this photo identification under "highly suggestive" circumstances. While this argument may be relevant to evidence suppression at a criminal trial, it is not relevant to the probable cause determination here.[33] Thus, Defendants had sufficient

---

[30] *United States v. Yusuf*, 461 F.3d 374, 385 (3d Cir. 2006).

[31] *Id.* at 386.

[32] *Id.* at 385.

[33] *See, e.g.*, *Robinson v. Cook*, 706 F.3d 25, 34 (1st Cir. 2013) ("[W]e think it unwise to expand the *Brathwaite* framework [for unduly suggestive identifications] from 'a rule of evidence to a rule of damages' by applying it in an arrestee's

information in front of them to conclude that the drug dealer was Goodwin.

We note that it may be advisable for officers to investigate further in other circumstances. For example, if the officers possessed more concrete evidence that the suspect was released on the exact date of the crime he allegedly committed but were unsure of the exact time of release, or if there was no photo identification involved, further inquiry might be necessary. But here, all the booking sheet told Defendants was that Goodwin was in custody [] before the date of the first drug buy. While this may have raised suspicion as to Goodwin's whereabouts around the time of the first drug buy, it did not undermine probable cause given the other information Defendants had in their possession at the time.

Because Goodwin has not set forth sufficient proof that Defendants deliberately or recklessly disregarded the truth when they submitted the warrant application to secure his arrest warrant, Defendants are entitled to qualified immunity on his false imprisonment claim.

### B. Malicious Prosecution

Goodwin must also show lack of probable cause to prevail on his malicious prosecution claim.[34] We have already held that probable cause existed here. Moreover, a

_____

civil suit alleging that probable cause was undermined by an unreliable identification." (quoting *Phillips v. Allen*, 668 F.3d 912, 915 (7th Cir. 2012))).

[34] *Estate of Smith v. Marasco*, 318 F.3d 497, 521-22 (3d Cir. 2003).

grand jury issued an indictment against Goodwin for the same charges for which he was arrested, which "constitutes prima facie evidence of probable cause to prosecute."[35]   Thus, Goodwin's malicious prosecution claim likewise fails and Defendants are entitled to qualified immunity on this claim.

## IV.

No one disputes that, had Defendants possessed and ignored plainly exculpatory evidence when submitting Goodwin's warrant application, this would undermine if not eviscerate a finding of probable cause.  But that is not the case here.  The Plainfield booking sheet indicates that Goodwin was in custody [] before the date of the first drug deal in which he was allegedly involved.  At most, then, the booking sheet raised suspicion as to Goodwin's whereabouts around that time, but it did not trigger an obligation that Defendants confirm his release date given the other information they possessed at the time.  Because we conclude that Defendants had probable cause to arrest and prosecute Goodwin, they are entitled to qualified immunity.

---

[35] *Rose v. Bartle*, 871 F.2d 331, 353 (3d Cir. 1989). Defendants argue that Goodwin's grand jury indictment creates a rebuttable presumption of probable cause for all of his claims.   But Goodwin's arrest occurred before the indictment, pursuant to an arrest warrant.  The presumption attaches only to the indictment and beyond, and thus has no bearing on an arrest that precedes the indictment. *See, e.g.*, *Jones v. Cannon*, 174 F.3d 1271, 1285 n.8 (11th Cir. 1999) (explaining that "a subsequent grand jury indictment does not retroactively provide probable cause for a false arrest that had already taken place").

Accordingly, we will reverse the District Court's denial of Defendants' claim for qualified immunity with direction to enter judgment in favor of Defendants.