**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-4385
_____

UNITED STATES OF AMERICA

v.

TONY GAY,
                    Appellant

_____

On Appeal from the United States District Court for the
Western District of Pennsylvania
(D.C. No. 2-14-cr-00154-001)
District Judge: Honorable Nora B. Fischer

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
February 5, 2018

Before:  CHAGARES, SCIRICA, and COWEN, Circuit Judges.

(Filed: February 14, 2018)
_____

OPINION*
_____

---

* This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

Tony Gay ("Gay") appeals his judgment of conviction for possession with intent to distribute 100 grams or more of heroin in violation of 21 U.S.C. § 841 and possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c) following a conditional guilty plea. Gay argues that the District Court erred in denying his motion to suppress evidence. We will affirm.

I.

In 2011, Gay pleaded guilty to three counts of manufacture, delivery, or possession with intent to deliver a controlled substance in the Court of Common Pleas of Allegheny County. In 2013, Gay was paroled.

Gay's parole was supervised by Parole Officer Michelle Contis ("Contis"). As a parolee, Gay was subject to numerous conditions, including: (1) a nightly curfew from 8:00 p.m. until 6:00 a.m; (2) a prohibition on possessing or using any illegal drugs, or being present in a place where illegal drugs are kept; (3) a prohibition on driving without a valid license and insurance; (4) a prohibition on having any contact with current or former members of any gang with which Gay had ever been affiliated; (5) a prohibition on meeting or communicating with persons who have been charged with a controlled substance offense or who use, possess, or sell controlled substances without a license or prescription to do so; and (6) a requirement that he notify his parole supervisor within 72 hours after being arrested or receiving a summons or citation for an offense punishable by imprisonment. He also "expressly consent[ed] to the search of [his] person, property, and residence, without a warrant, by agents of the Pennsylvania Board of Probation and Parole [('PBPP')]."

2

Contis, as a Parole Officer, received daily briefings from the City of Pittsburgh Police Department, otherwise known as blotters. These blotters relayed information reported to the Pittsburgh Bureau of Police Criminal Intelligence Unit (the "CIU") by individual police officers "compil[ing] information from police complaints, daily shots fired or listed, any important, notable events, and any police contact with any known gang members or any serious police contact of the day." Appendix ("App.") 162. The CIU's officers "spend[] all their time on researching and monitoring the gangs in the area," App. 166, and they provide training to other law enforcement agencies in the field of gang activity. PBPP officers regularly rely on the CIU's blotter, and have previously identified violations of conditions committed by other supervised individuals based on the information contained in the blotter.

For nearly ten months, Contis learned no information suggesting that Gay had violated any terms of his parole. But on November 5, 2013, Contis read the CIU blotter for the previous day, which included a report of contact between Gay and Pittsburgh police officers. It read:

> On 11/2/13 at 0031 hrs, detail Officers conducted a traffic stop on a **2013 tan Chevy Tahoe OH reg. FXT4855** occupied by the driver **Northview Heights Crips** member **Tony GAY** (BM DOB [redacted]), front passenger **Tawain CLARK** (BM DOB [redacted]) and rear passenger **Northview Heights Crips** member **Brian PINKNEY** (BM DOB [redacted]). **CLARK** and **PINKNEY** admitted they had marijuana in the vehicle. ROs recovered from **CLARK** a blunt, a burnt marijuana roach and $2925. ROs recovered from **PINKNEY** a small baggie of marijuana. **GAY** does not have a valid license and the vehicle was towed. **CLARK** and **PINKNEY** were advised of the summons process.

App. 5.

3

The next day, Gay reported to Contis for a regularly scheduled probation meeting. Contis asked Gay "if there was anything he needed to report" but Gay did not disclose the police interaction until Contis told him that she already knew about it. App. 170. Concerned by the blotter's identification of Gay as a gang member, and by his failure to disclose the police interaction, Gay's parole supervisors wanted to search Gay's home. Gay told Contis that he did not have the key to his house. PBPB officers handcuffed Gay and brought him to his house, where they forced entry and conducted a search. The officers found no evidence of gang activity, but in Gay's bedroom Contis found heroin hidden in a backpack and a handgun stashed in a purse.

Gay was arrested and indicted for possession with intent to distribute 100 grams or more of heroin in violation of 21 U.S.C. § 841 (count one), possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g) and 924(e) (count two), and possession of a firearm in furtherance of a drug-trafficking crime in violation of 18 U.S.C. § 924(c) (count three). The District Court denied Gay's motion to suppress the gun and drugs. Gay subsequently pleaded guilty to counts one and three, reserving the right to appeal the denial of his motion to suppress. The District Court sentenced Gay to 192 months of imprisonment. Gay timely appealed.

II.

The Fourth Amendment prohibits unreasonable searches of a person's home, and warrantless entry into an ordinary person's home is "unreasonable per se" absent a few "exceptions." United States v. Stabile, 633 F.3d 219, 230 (3d Cir. 2011) (quoting Payton v. New York, 445 U.S. 573, 586 (1980)). One such exception is the parole/probation

4

exception.  See Samson v. California, 547 U.S. 843, 848–49 (2006); United States v. Baker, 221 F.3d 438, 443–44 (2000); United States v. Hill, 967 F.2d 902, 909 (3d Cir. 1992).[1]  When a Pennsylvania parolee has consented to warrantless searches of his home as a prerequisite to being paroled, "'no more than reasonable suspicion' is required to justify a search." United States v. Williams, 417 F.3d 373, 376 (3d Cir. 2005) (citation omitted) (quoting United States v. Knights, 534 U.S. 112, 121 (2001)).  The parole exception applies in this case because Gay was on parole when Contis searched his home.

Reasonable suspicion exists when law enforcement officers have "a particularized and objective basis for suspecting legal wrongdoing" has occurred or that evidence will be found.  Id. (quoting United States v. Arvizu, 534 U.S. 266, 273 (2002)); see also Baker, 221 F.3d at 443–44.  The officer's suspicion must rest on "specific and articulable facts." Terry v. Ohio, 392 U.S. 1, 21 (1968).  Assessing the totality of the circumstances, law enforcement officers may permissibly assume that parolees "by virtue of [their] status . . . [are] more likely than the ordinary citizen to violate the law." Samson, 547 U.S. at 849.

---

[1] The Government argues that even a suspicionless search of Gay's home would not violate the Fourth Amendment under Samson.  In Samson, the Supreme Court held that California law enforcement could permissibly conduct a suspicionless search of a California parolee.  Gay responds that Samson does not directly apply to his case because Pennsylvania's parole system operates differently than California's.  Unlike California, which permitted suspicionless searches of parolees, Pennsylvania permits parole officers to search a parolee's home only if they have reasonable suspicion that evidence of crimes or parole violations would be found.  Because we hold that Contis had reasonable suspicion that Gay's home contained evidence of parole violations, we will not address whether she could have searched Gay's home without suspicion.

Law enforcement officers usually may rely on facts relayed by other officers to establish reasonable suspicion. Such information is "presumed to be reliable." United States v. Yusuf, 461 F.3d 374, 385 (3d Cir. 2006) (collecting cases). To rebut the presumption of reliability, a defendant must show (1) that the information "would have put a reasonable official on notice that further investigation was necessary;" and (2) that "the [official's] subsequent inquiry would have rendered the [official's] reliance upon that information unreasonably reckless." Id.; see also Goodwin v. Conway, 836 F.3d 321, 328–29 (3d Cir. 2016).

Gay argues that the District Court erred by considering the contents of the CIU's blotter — and particularly the blotter's identification of Gay as gang member — in its reasonable suspicion analysis for two reasons.[2] First, that the information was not reliable because it was not signed by a particular author, and second, that it was not reliable to Contis because Contis had no information that Gay had committed any parole violations before reading the blotter. As for the first argument, this Court has never held that a statement by a sister law-enforcement agency must be signed to be reliable, and we decline to do so here. The institutional author, Pennsylvania's CIU, was sufficient to establish that the report was presumptively reliable. As for the second argument, Gay's prior compliance did not immunize him from future suspicion. Moreover, the fact that he admitted to conduct constituting numerous violations of his parole conditions, by driving

---

[2] Gay argues that the District Court "determined the brief was wrong about Mr. Gay being in a gang." Gay Br. 22. This mischaracterizes the District Court's analysis; it merely observed that no other evidence in the record showed that Gay had joined a gang.

without a license after curfew, gave Contis reason to believe that Gay was not a compliant parolee.

Before searching Gay's home, Contis knew specific, articulable facts which provided a particularized and objective basis for suspecting that Gay's home contained evidence of crimes and parole violations. By Gay's own admission, he had violated the terms of his parole by driving without a license and breaking his curfew, corroborating parts of the blotter which identified him as a gang member. Moreover, Gay's passengers had burnt and unburnt marijuana on their persons, and enough cash to raise the suspicion that they were involved in the drug trade. Gay was driving a rented car with out-of-state tags, a common practice among drug traffickers. All this occurred while Gay on parole after being convicted for drug crimes. Contis had ample reason to suspect that Gay had recidivated, which made the blotter's assertion that Gay had joined a gang all the more credible. These same facts gave Contis reasonable suspicion that Gay's house contained evidence that he possessed drugs or drug paraphernalia.

The information Contis knew also gave her reasonable suspicion that Gay's home contained evidence that he possessed drugs or drug paraphernalia. Although she had no evidence suggesting that Gay knew what his passengers were carrying, she knew Gay was not an ordinary citizen. He was serving a sentence of parole, and at the time of the incident was actively violating numerous parole conditions. This gave Contis reasonable suspicion that Gay's home contained evidence of drug crimes, even though the same might not be true if a non-parolee had been in Gay's circumstances. See Samson, 547 U.S. at 849.

7

We conclude that Contis reasonably suspected that Gay's home contained evidence of gang activity and drug crimes, and therefore her search did not violate Gay's Fourth Amendment rights.

## III.

For the foregoing reasons, we will affirm the judgment of the District Court.