**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-3380
_____

JOHN G. COSTINO,
                                        Appellant

v.

POLICE OFFICER TONYA ANDERSON; SPECIAL AGENT MARGARITA
ABBATTISCIANNI; MATTHEW D. WEINTRAUB, Cape May County Assistant
Prosecutor; MEGHAN HOERNER, Cape May County Assistant Prosecutor;
DETECTIVE GEORGE HALLETT; LIEUTENANT DETECTIVE LYNN FRAME;
TINA KELL, Cape May County Assistant Prosecutor; ROBERT L. TAYLOR, Cape May
County Prosecutor; CAPE MAY COUNTY; LITTLE EGG HARBOR TOWNSHIP

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 1-14-cv-06940)
District Judge: Honorable Joseph H. Rodriguez
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
On September 12, 2019

Before: HARDIMAN, GREENAWAY, JR., and BIBAS, *Circuit Judges.*

(Filed: October 4, 2019)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

BIBAS, *Circuit Judge*.

Not every failed prosecution is a malicious one. After an undercover sting operation, two grand juries indicted former doctor John Costino. There was evidence that he had been prescribing opioids illegally, but a jury acquitted him on all counts. Costino now claims that the investigators maliciously made up evidence against him to convince those grand juries that there was probable cause. But the facts say otherwise.

The most Costino can show is that the investigators failed to present some arguably favorable evidence to the grand juries. But they had no obligation to do so. So we will affirm.

## I. BACKGROUND

### A. The investigation

For decades, Costino ran a successful medical practice in North Wildwood, New Jersey. Because he was the only pain-management doctor in the area, he prescribed a lot of opioids. But investigators from the Drug Enforcement Administration (DEA) and Cape May County, New Jersey, suspected that he might be prescribing some painkillers illegally.

To test their suspicions, they sent Tonya Anderson, a local New Jersey police officer, to Costino's clinic. Anderson went in undercover, with a recording device and transmitter in her purse, posing as a stripper. She asked him for Percocet, a popular painkiller, not because she was sore or in pain but just to "unwind after work" and "relax[]." App. 76a, 244a. Costino observed her gait as she walked in and questioned her briefly, but he did not otherwise examine her muscles or bones. Still, he diagnosed her with a musculoskeletal injury. Before she left, she signed Costino's boilerplate Pain Management Agreement.

2

Over the next few months, Costino prescribed Percocet to Anderson five times, even though he noted that she was "basically a healthy gal." App. 79a. And when she wanted a stronger, longer-lasting drug, he increased her prescription's strength. He did so even though Anderson said she had "[n]o problems at all." App. 84a.

To be safe, the investigators wanted more evidence. So they sent an undercover DEA agent, posing as another stripper, with Anderson to Costino's clinic. When Costino asked the agent why she needed Percocet, she replied: "[I]t's basically the same as Tonya here." App. 140a. After a night of stripping, she "need[ed] something to just bring [her] down a little bit during the day." *Id.* She told Costino that she was "one hundred percent healthy" and "fe[lt] good." App. 152a–54a. Even so, Costino wrote both women prescriptions for thirty Percocets. Three weeks later, the women told him they were going to Florida for a few months, so he wrote each of them another prescription for twice as many pills because Florida "ha[s] a lot of rules and regulations" governing painkillers. App. 173a–75a.

## B. The criminal trial and acquittal

After the undercover investigation, Cape May County Detective George Hallett got a warrant to search Costino's clinic. Hallett searched the clinic and arrested Costino.

Cape May County prosecutors then took over the case. They presented the evidence gathered by Hallett, Anderson, the DEA agent, and others to two grand juries. Both indicted Costino on dozens of counts of healthcare fraud and illegal distribution of opioids.

Before trial, the New Jersey Board of Medical Examiners held hearings to revoke Costino's medical license. At those hearings, Anderson certified that while Costino was prescribing her Percocet, she did not have any medical issues with her spine. But Anderson

did have one chiropractic appointment around that time for back and shoulder pain. When Costino discovered this discrepancy, Anderson submitted a second, corrected certification noting the chiropractic appointment. She explained that she did not disclose the treatment at first because she saw it as "holistic" rather than "medical." App. 49a. After considering the evidence, including the corrected certification, the Board revoked Costino's medical license. The Appellate Division of the New Jersey Superior Court affirmed.

Costino's criminal case then went to trial. After deliberating for less than two hours, the jury acquitted him on all counts.

### C. The malicious-prosecution suit

Costino then brought malicious-prosecution claims against the officers, prosecutors, and local-government entities that took part in the investigation. He claimed that, in seeking the indictments, they had "concealed exculpatory evidence … knowingly procured and relied upon false certifications and testimony … and procured the alteration of evidence." App. 188a. After discovery, Little Egg Harbor Township, Officer Anderson, and Detective Hallett moved for summary judgment. The District Court granted their motions. Costino now appeals.

### D. Jurisdiction and standard of review

The District Court had jurisdiction under 28 U.S.C. § 1331, and we have jurisdiction under § 1291. We review de novo. *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 751 (3d Cir. 2019). We view the evidence in the light most favorable to Costino, asking whether a reasonable jury could return a verdict for him. *Id.* at 749 n.1, 752.

4

## II. THE DISTRICT COURT RIGHTLY DISMISSED THE MALICIOUS-PROSECUTION SUIT BECAUSE THE INVESTIGATORS HAD PROBABLE CAUSE

### A. Malicious prosecution and the presumption of probable cause

To prove malicious prosecution, Costino must show: (1) Hallett and Anderson started a criminal proceeding against him; (2) the criminal proceeding ended in his favor; (3) they started the proceeding without probable cause; (4) they "acted maliciously or for a purpose other than bringing the plaintiff to justice"; and (5) he was deprived of liberty. *Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007). Under prong three, a showing of probable cause is a complete defense. *Goodwin v. Conway*, 836 F.3d 321, 327 (3d Cir. 2016).

Here, two grand juries found probable cause. In a malicious-prosecution suit, "a grand jury indictment … constitutes prima facie evidence of probable cause." *Rose v. Bartle*, 871 F.2d 331, 353 (3d Cir. 1989). We call this the "presumption of probable cause." *Goodwin*, 836 F.3d at 329 n.35.

Costino claims that this presumption does not apply because some of his claims arise from alleged pre-indictment misconduct. That may be true for false-arrest claims. *See id.* But malicious prosecution is different. *See Johnson*, 477 F.3d at 82 (collecting cases). Costino's prosecution, unlike his arrest, was not complete until after the grand juries indicted him. So the presumption of probable cause applies.

Costino can rebut the presumption only by showing that the indictments resulted from "fraud, perjury or other corrupt means." *Rose*, 871 F.2d at 353. To make that showing, Costino claims that Hallett and Anderson falsified evidence against him. But the record says otherwise.

### B. Though Anderson and Hallett did omit some evidence, they did not fabricate it

Costino claims that Anderson falsely denied seeking medical treatment for her spine. This information, Costino argues, would have shown that he prescribed Percocet lawfully to treat her pain, undercutting probable cause. He also argues that Hallett, in applying for a search warrant and testifying before the grand jury, failed to include a long list of allegedly exculpatory evidence.

Although evidence of Anderson's chiropractic appointment was favorable, it does not undermine probable cause. First, failing to disclose potentially exculpatory evidence differs from affirmatively falsifying evidence. Investigators and prosecutors need not present exculpatory evidence to grand juries. *United States v. Williams*, 504 U.S. 36, 53 (1992).

Second, Anderson signed the first, faulty certification after the second grand jury's indictment. So it could not have influenced either grand jury. And Costino concedes that "the factual record is devoid of any reference to whether … Anderson ever testified … before the [g]rand [j]ury." Reply Br. 4.

Third, Anderson's certification does not negate the compelling inculpatory evidence that the investigators presented, such as Costino's prescribing Percocets so that Anderson and the DEA agent could "unwind" and "relax[ ]." App. 76a, 244a. So even if the grand juries had known about Anderson's chiropractic appointment, there was still more than enough evidence to support probable cause. *Cf. Wilson v. Russo*, 212 F.3d 781, 786–87 (3d Cir. 2000) (requiring a plaintiff bringing a false-arrest claim to show that the false

6

statements in a warrant application were "material, or necessary, to the finding of probable cause" (internal quotation marks omitted)).

As for Hallett, we need not delve into the details of his alleged omissions. As discussed, the mere failure to disclose is not the same as maliciously falsifying evidence. In his grand-jury testimony, Hallett did not have to disclose exculpatory evidence. *Williams*, 504 U.S. at 53. And in his warrant application, the alleged omissions were at worst careless, not malicious or reckless. In any event, they were immaterial. Even if "we excise the [alleged] inaccuracies and insert the [omitted] facts," there was still more than enough evidence for probable cause. *Wilson*, 212 F.3d at 789. Indeed, Hallett did not testify before the second grand jury, yet it still indicted Costino.

In short, these errors and omissions fall well short of fraud, perjury, or corruption. So Costino has not rebutted the presumption of probable cause.

\* \* \* \* \*

Costino's ultimate acquittal does not mean that the investigators lacked probable cause to pursue him. On the contrary, they had substantial incriminating evidence. And two grand juries found probable cause to indict. Even reading the record in his favor, Costino cannot show that these findings resulted from malicious or reckless misconduct. So his malicious-prosecution claims fail, and we will affirm.