**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-2238
_____

JHEN SCUTELLA,
                                  Appellant
v.

PATROLMAN JAMES COUSINS 3RD;
PATROLMAN ROBERT WILLIAMS;
LT. GOOZDICH

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 1:17-cv-00222)
District Judge: Honorable Susan Paradise Baxter

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on January 30, 2020

Before: CHAGARES, RESTREPO, and BIBAS, *Circuit Judges*

(Filed: May 1, 2020)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

BIBAS, *Circuit Judge*.

If a police officer acts on a reasonable belief in a defendant's guilt, he cannot be liable for malicious prosecution. The police charged Jhen Scutella with falsely reporting his truck stolen. It was not; instead, the police had impounded it after Scutella fled a traffic stop. Because the police reasonably believed that Scutella had knowingly filed a false report, they had probable cause to charge him with a crime for doing so. Though prosecutors later dropped the charges, that does not make the prosecution malicious. So we will affirm the District Court's dismissal of this malicious-prosecution suit.

## I. BACKGROUND

### A. Bar hopping gone awry

One night, Scutella and his friend Chaz Mathis decided to go bar hopping in Erie, Pennsylvania. They met up with Mathis's two cousins at one bar for a drink before leaving for another bar.

The four of them got into Scutella's white truck. Scutella, who had been drinking, drove to a gas station. When they arrived, Scutella and Mathis got into a tussle. A gas-station employee called the police and warned that the men might have a gun. When they ended their scuffle, they got back into the truck and drove to a bar called Luigi's.

Around 11 p.m., Officer James Cousins responded to the gas-station employee's call. He spotted Scutella's truck, which matched the dispatcher's description of it, and began tailing it. Officer Cousins did not yet recognize the truck as Scutella's, but the two had met before.

2

A few years earlier, Officer Cousins had arrested Scutella for disorderly conduct and driving under the influence, among other alleged offenses. During the arrest, Cousins had allegedly tasered Scutella while he was handcuffed on the ground. So Scutella had sued Cousins and other officers for excessive force. That suit settled three months before Cousins's and Scutella's paths crossed again near the gas station.

With Officer Cousins tailing him, Scutella drove and parked his truck near Luigi's. Cousins parked behind him. When Scutella and his passengers got out, Cousins allegedly ordered them "[n]umerous times" to stop and stay with the truck. App. 91. Cousins stayed back about twenty yards, because the dispatcher had said someone might have a weapon. He also radioed for backup.

According to Officer Cousins, the four disobeyed his orders and walked away in two directions. Once backup arrived, the police went looking for the four. They found the three passengers and arrested them for disorderly conduct and public intoxication. But they could not find Scutella. Later, Cousins returned to the truck, glanced through the window, and saw marijuana in plain view on the driver's-side floorboard. So he had the truck towed and impounded.

Meanwhile, Scutella entered Luigi's alone. He ordered a shot of vodka and a six-pack of beer and socialized with some patrons. After more than forty-five minutes, Scutella looked out the bar's door and saw that his truck was gone. He then stayed for another twenty to thirty minutes, ordering another vodka before heading home. On his way home, he called the police to report his truck stolen.

A clerk at the police station took the call. The clerk told Officer Cousins, who had returned to the station, and Lieutenant Steven Goozdich, the officer in charge that night, that Scutella had reported his truck stolen. Cousins told the clerk to write up a report of the call, but Scutella was not told that the police had impounded the truck "[b]ecause his vehicle was involved in criminal activity." App. 100.

Lieutenant Goozdich assigned Officer Robert Williams to investigate Scutella's report. Shortly after the call, around 1 a.m., Williams went to Scutella's home to interview him. In a signed affidavit, Scutella misstated that he had parked his stolen truck outside a different bar called Reno's, at least two blocks away from where he had actually parked. And though he had returned from Luigi's not long before, he told Williams that he had entered Reno's.

## B. State charges of disorderly conduct and false reports

Nearly two weeks later, Officer Cousins charged Scutella with disorderly conduct and possession of marijuana. After plea negotiations, he pleaded guilty only to disorderly conduct for fleeing the traffic stop.

Separately, Officer Williams charged Scutella in a complaint with two crimes: writing up and signing a false report that his truck had been stolen and where it had been parked (an unsworn falsification to the police), and making a knowingly false oral report to police to the same effect. *See* 18 Pa. Cons. Stat. §§ 4904(a)(1), 4906(b)(1). The case went to trial on those charges in the Court of Common Pleas of Erie County.

4

Before trial, the court excluded evidence of Scutella's earlier excessive-force suit as irrelevant. At trial, the court dismissed the written-statement charge but let the charge of a false oral report proceed, and the jury convicted on it.

On appeal, the Pennsylvania Superior Court held that the trial court should have admitted testimony about the excessive-force suit because it was relevant to Officer Cousins's motive and went to his credibility. It thus vacated Scutella's conviction and sentence and remanded for a new trial.

Rather than try Scutella again, the prosecution moved to dismiss the case. It saw no reason to retry him because he had already served more than six months in detention for the crime, which carried a maximum sentence of six to twelve months. The court granted the dismissal.

## C. Federal suit for malicious prosecution

Scutella sued the three police officers in the Western District of Pennsylvania. He argued that Officer Cousins, Officer Williams, and Lieutenant Goozdich had maliciously prosecuted and conspired to maliciously prosecute him by filing the two false-report charges without probable cause. He also alleged many other claims, all of which were later dismissed as time barred or claim precluded and are not raised on appeal. After discovery, the District Court granted summary judgment for the officers. It reasoned that Scutella had not proven that his criminal proceeding had ended in his favor, a necessary element of a malicious-prosecution claim under 42 U.S.C. § 1983.

We review the District Court's grant of summary judgment de novo. *Tundo v. County of Passaic*, 923 F.3d 283, 286 (3d Cir. 2019). Summary judgment is proper "if the movant

shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Constitution Party v. Cortes*, 824 F.3d 386, 393 (3d Cir. 2016) (quoting Fed. R. Civ. P. 56(a)).

## II. THE POLICE HAD PROBABLE CAUSE TO PROSECUTE SCUTELLA FOR FALSE REPORT AND UNSWORN FALSIFICATION

### A. Legal standards and scope of review

To succeed on his malicious-prosecution claim under § 1983, Scutella must show five elements: (1) the officers began the criminal proceeding; (2) they did so without probable cause; (3) the proceeding ended in Scutella's favor; (4) the officers "acted maliciously or for a purpose other than bringing [him] to justice"; and (5) as a result of the legal proceeding, he "suffered deprivation of liberty consistent with the concept of seizure." *Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007). The District Court dismissed Scutella's malicious-prosecution and malicious-prosecution-conspiracy claims at the third prong because the criminal proceeding did not end in his favor. Scutella disputes that finding on appeal.

We need not decide whether the District Court's analysis was correct because we can affirm on any ground supported by the record. *Blake v. JP Morgan Chase Bank NA*, 927 F.3d 701, 705 (3d Cir. 2019). As the police officers had probable cause, Scutella's claims fail at prong two.

Probable cause is a low hurdle. It requires only "a fair probability that the person committed the crime." *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 467 (3d Cir. 2016) (quoting *Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000)). The officers need not have been certain

6

that Scutella was guilty; they need only have believed it reasonably. *Wright v. City of Philadelphia*, 409 F.3d 595, 602 (3d Cir. 2005). Scutella bears the burden of showing that their belief was unreasonable. *See Goodwin v. Conway*, 836 F.3d 321, 327 (3d Cir. 2016).

In addition, even at summary judgment, we can consider both facts favorable and unfavorable to Scutella. Though Federal Rule of Civil Procedure 56(a) requires courts to view the evidence "in the light most favorable to the non-moving party," the probable-cause standard lets courts consider "conflicting, even irreconcilable evidence." *Dempsey*, 834 F.3d at 468. So to decide whether the officers' belief of guilt was reasonable, we consider all the facts that were known to them. *Id.*

**B. The police had enough evidence for probable cause**

The officers charged Scutella with falsely reporting that his truck was stolen and where it had been parked. Scutella argues that they lacked probable cause because he did not know that the police had impounded his truck. We disagree for three reasons.

1. *The officers reasonably believed that Scutella had filed a false report to hide his unlawful conduct*. The officers reasonably believed that Scutella had falsely reported his truck stolen to cover up illicit activities. Officer Williams testified that people often falsely report their cars stolen "as a cover for someone to deny they were in the vehicle at all or to deny that they had anything to do with it." App. 121. The officer believed that Scutella was likewise lying to cover his tracks. Though this theory was hardly ironclad, it was reasonable.

Officer Williams had plenty of reason to suspect that Scutella was covering up his illegality: First, he knew that Scutella had fled a traffic stop that night. Though Scutella denied

7

this at trial, he neither admits nor denies the officers' account of the traffic stop on appeal. Besides, by pleading guilty to disorderly conduct as charged, Scutella admitted that he had "fail[ed] to respond" to Officer Cousins's "numerous request[s] to cease his actions and return to the vehicle he had just exited." App. 265.

Second, Officer Williams knew that Scutella had been involved in a fight earlier that night and that he was possibly carrying a weapon. Third, he knew that the officers had found marijuana in the truck. So Williams reasonably suspected that Scutella had plenty to hide by reporting his truck stolen.

2. *The traffic stop and marijuana found in the truck supported Scutella's guilt*. Considering all the facts known to the officers, they reasonably believed that Scutella had reported the truck stolen even though he knew the police had it. Scutella offers no evidence to the contrary.

As mentioned, Scutella had fled a traffic stop. A reasonable officer could believe that Scutella thus knew that the police would likely search for him and examine his truck.

And there is no dispute that the police found marijuana in the truck from outside, readily visible on the driver's-side floorboard. True, Scutella later denied seeing the marijuana. But given the location of the marijuana, a reasonable officer could have suspected that Scutella knew that there was marijuana in the truck.

Against this backdrop, the officers argue that "[a]ny reasonable officer investigating" Scutella's report would have probable cause to believe that his truck, "which also happened to contain illegal substances," was falsely being reported stolen. Appellees' Br. 24. We agree.

8

Scutella produced no evidence to suggest that the officers' belief was unreasonable. He argues only that he subjectively did not know that the police had impounded his truck. That is not enough to make the officers' belief in his guilt unreasonable.

3. *Scutella's misstatements also supported his guilt.* Finally, the officers were justifiably suspicious about Scutella's misstatements. Scutella told Officer Williams that his truck had been stolen but said nothing about a traffic stop. And when asked "several times" where it was, he said that he had parked it outside Reno's, a couple of blocks from Luigi's, and that he had gone inside Reno's. App. 124.

But Officer Williams saw through these misstatements. The officer knew that the truck was not stolen, but in police custody. He knew that Scutella had fled Officer Cousins's traffic stop. And he knew that Scutella had parked his truck near Luigi's, not Reno's.

Thus, when Scutella made those misstatements, Officer Williams reasonably believed that Scutella had lied. He visited Scutella's home a little more than two hours after Officer Cousins first responded to the gas station. Williams saw that when Scutella misstated the facts, "he was not slurring [his] speech or acting intoxicated." App. 118. So his belief that Scutella was not mistaken, but lying, was reasonable. Again, Scutella has not met his burden of proof, offering no evidence to undercut Officer Williams's reasonable skepticism. *See Goodwin*, 836 F.3d at 327. The officers thus had probable cause to prosecute Scutella for false report and unsworn falsification. *See Wright*, 409 F.3d at 602.

* * * * *

Scutella may not have known that the police had seized his truck. But the officers' belief in his guilt need not have been correct, only reasonable. In the totality of the circumstances, it was. The officers thus had probable cause to charge Scutella with making a false report and unsworn falsifications. Because probable cause is a complete defense to malicious prosecution, we will affirm.