**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 20-3469
_____

MICHAEL RAYMOND MORENCY; ROEUTH MORENCY,
Husband and Wife,

Appellants

v.

CITY OF ALLENTOWN; ALLENTOWN POLICE DEPARTMENT;
POLICE CHIEF TONY ALSLEBEN; OFFICER DIEHL;
OFFICER ERIC BLOOD; SERGEANT FLORES;
UNIDENTIFIED UNIFORMED ALLENTOWN POLICE OFFICER 1;
UNIDENTIFIED UNIFORMED ALLENTOWN POLICE OFFICER 2,

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 5-19-cv-05304)
Honorable Joseph F. Leeson, Junior, U.S. District Judge

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on July 7, 2021

Before: SHWARTZ, KRAUSE, and FUENTES, Circuit Judges
(Opinion filed: August 23, 2021)

_____

OPINION[*]

_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

FUENTES, *Circuit Judge.*

Husband and wife Michael and Roeuth Morency appeal from the District Court's grant of summary judgment in favor of the City of Allentown and four of its police officers on their civil rights claims. The Morencys claimed that the City and its officers violated their rights under the Fourth Amendment by arresting and prosecuting Michael[1] without probable cause and unlawfully searching their home. We will affirm.

**I.**

On June 14, 2018, Michael noticed two boys kicking a soccer ball, repeatedly hitting his car. The boys were both neighbors, one was the son of Hector Sanchez, who lived down the street. Michael ordered the boys to stay off his property, but rather than leave, the boys kicked the ball at Michael's car one last time. The ball then landed in a bush in front of the Morencys' porch. Hector Sanchez's son and Michael attempted to retrieve the ball at the same time, causing them to run into one another.

Hector Sanchez's son returned home upset by the incident and told his father what had happened. Hector Sanchez decided to confront Michael and went to the Morencys' home to speak with him. While several neighborhood children were present, the two men had a brief conversation. Michael claims that during this conversation, Sanchez approached him in a threatening manner, causing Michael to draw a firearm and point it

---

[1] We refer to each of the Morencys individually by their given names to avoid confusion and unnecessary repetition, intending neither disrespect nor any indication of familiarity.

at the ground. Michael told Sanchez to leave his property, which he did, taking his children with him.

After the incident, Sanchez called 911. Allentown Police Officers Eric Blood and Matthew Diehl responded and spoke with Sanchez and his son. Sanchez claimed his son told him that Michael had pushed him to the ground twice during their incident, and he described Michael's firearm as a small chrome revolver. Officer Diehl searched the state firearm registry and confirmed that Michael owned a .38 caliber revolver. Officer Diehl also confirmed that the vehicle Sanchez's children identified as Michael's was registered to him. The officers attempted to speak with Michael about the incident, but he declined to leave his house to talk to them.

After returning to the station that evening, Officer Blood completed an arrest warrant application and an affidavit of probable cause. Based on these documents, Assistant District Attorney Diane Markovitz approved charging Michael with two counts of simple assault[2] and one count of disorderly conduct.[3] The affidavit and warrant application were presented to Magisterial District Judge Patricia M. Engler the following day, June 15, with Officer Blood appearing before the judge to swear to its contents.

Around the same time that day, Sergeant Robert Flores, who learned about the previous day's events from officers Diehl and Blood at a morning meeting at the police station, conducted surveillance of the Morencys' home. He saw Michael leave in his car,

---

[2] In violation of 18 Pa. Cons. Stat. § 2701(a)(1), (a)(3).

[3] In violation of 18 Pa. Cons. Stat. § 5503(a)(4).

3

and pulled him over, advising him he was being detained in connection with the previous day's incident. Seven minutes after the initial stop, Sergeant Flores learned via his radio that a warrant for Michael's arrest had been issued, and another officer arrived to take him into custody.

One of Michael's bail conditions was that he not reside in a home with firearms. The arraigning judge requested that Officers Blood and Diehl facilitate the removal of any firearms in the Morencys' home. Before doing so, Officer Diehl testified that he contacted a district attorney, who told him that he could lawfully search the Morencys' home with the consent of an adult occupant. The same day Michael was arrested, Officers Diehl and Blood went to the Morencys' home and asked permission from Roueth to search for her husband's firearms. Officers Blood and Diehl both testified that Roueth consented to the search of the home. The officers found two firearms during their search. They left the weapons for her to secure, and testified that they did not take anything from the home.

The charges against Michael were dismissed at a preliminary hearing. The Morencys then brought this suit, bringing claims of malicious prosecution, false arrest, and false imprisonment against Officer Blood, and claims for false arrest, unlawful search, and false imprisonment against Sergeant Flores. The Morencys also claimed that Appellants conspired to create probable cause to arrest him and brought *Monell* claims against the City of Allentown.[4] They also brought claims of intentional infliction of

---

[4] *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

4

emotional distress and loss of consortium against the City of Allentown. The District Court granted Appellees' motion for summary judgment on all claims, finding that the officers had probable cause to arrest and charge Michael, and that Roueth had consented to the search of their home.[5] This appeal followed.

## II.[6]

The Morencys raise three sets of claims on appeal. They contend that the District Court erred in finding Michael's arrest, imprisonment, and prosecution was supported by probable cause, and erred in finding that Roueth consented to the search of their home. They also argue the court erred in granting summary judgment on their *Monell* claims and in not granting their motion for relief under Federal Rule of Civil Procedure 60(a) and (b). We address each argument in turn.

---

[5] *See Morency v. City of Allentown*, No. 19-cv-5304, 2020 WL 5868407, at *6 (E.D. Pa. Oct. 2, 2020). The Morencys failed to file a statement of undisputed material facts or a response to the Defendants' statements of undisputed material facts. Federal Rule of Civil Procedure 56(e) provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may… consider the fact undisputed for purposes of the motion."

[6] The District Court had jurisdiction over this civil rights action under 28 U.S.C. § 1331 and 1343(a), and 42 U.S.C. § 1983. We have appellate jurisdiction to review final judgments under 28 U.S.C. § 1291. Our review of grants of summary judgment are plenary, applying the same standard as the district court. *United States ex rel. Kosenske v. Carlisle HMA, Inc.*, 554 F.3d 88, 94 (3d Cir. 2009).

## A.

As against Officer Blood, Michael brought claims for malicious prosecution, false arrest, and false imprisonment.[7] The District Court found that these claims failed because Officer Blood had probable cause to arrest and charge Michael, and even if he did not, Officer Blood would be entitled to qualified immunity.[8] We agree with the District Court's thorough analysis.

To prevail on all three of his claims against Officer Blood, Michael must demonstrate an absence of probable cause.[9] Probable cause exists "when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested."[10] "A 'common sense' approach [must be taken] to the issue of probable cause and a determination as to its existence must be based on the 'totality of the circumstances.'"[11]

---

[7] *Morency*, 2020 WL 5868407, at *6.

[8] *Id.* at *6–9, *11–12.

[9] *James v. City of Wilkes-Barre*, 700 F.3d 675, 680 (3d Cir. 2012) (false arrest requires that the arrest was made without probable cause); *McKenna v. City of Phila.*, 582 F.3d 447, 461 (3d Cir. 2009) (malicious prosecution requires demonstrating that a criminal proceeding was initiated without probable cause); *Groman v. Twp. Of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995) ("[a]n arrest based on probable cause [cannot] become the source of a claim for false imprisonment.").

[10] *Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995).

[11] *Goodwin v. Conway*, 836 F.3d 321, 327 (3d Cir. 2016) (alteration in original) (quotation mark omitted) (quoting *Paff v. Kaltenbach*, 204 F.3d 425, 436 (3d Cir. 2000)).

Here, no reasonable jury could conclude Officer Blood lacked probable cause to believe that Michael had twice committed simple assault and engaged in disorderly conduct. Under Pennsylvania law, a person is guilty of simple assault if they attempt "to cause or intentionally, knowingly or recklessly cause[] bodily injury to another" or if they "attempt[] by physical menace to put another in fear of imminent serious bodily injury."[12] A person is guilty of disorderly conduct if they recklessly "create[] a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor."[13]

Officer Blood had more than sufficient reason to believe that Michael had committed all three offenses. Sanchez told Officer Blood that his son claimed to have been pushed to the ground by Michael, and his son confirmed this account. Sanchez also told him that when he approached Michael to discuss this altercation, Michael drew a firearm while he and a number of neighborhood children were present. Officer Blood therefore had probable cause to believe that Michael assaulted Sanchez's son by pushing him to the ground, assaulted Sanchez himself when he drew the firearm during their conversation, and engaged in disorderly conduct by recklessly creating a hazardous condition without a legitimate purpose by drawing the weapon with the neighborhood children present. As Officer Blood had probable cause for the arrest and prosecution of

---

[12] Pa. Const. Stat. Ann. § 2701(a)(1), (a)(3).

[13] Pa. Const. Stat. Ann. § 5503(a)(4).

7

Michael, the District Court correctly granted summary judgment in the officers' favor on Michael's false arrest, false imprisonment, and malicious prosecution claims.

**B.**

Next, Michael argues that the District Court erred in granting summary judgment to Sergeant Flores. The District Court found that his claims failed because Sergeant Flores had either reasonable suspicion to conduct an investigatory stop or probable cause to arrest Michael, even without a warrant, and any search of Michael was incident to arrest and therefore lawful.[14] Again, we agree with the District Court.

As with his claims against Officer Blood, to prevail on his Fourth Amendment claims against Sergeant Flores, he must show he was detained either without probable cause or without reasonable suspicion.

Sergeant Flores learned of the altercation involving Michael, Sanchez, and Sanchez's son because Officers Blood and Diehl informed him of the previous day's events. The three officers planned to have Sergeant Flores surveil the Morencys' residence while Officers Blood and Diehl went to court to obtain a warrant for Michael's arrest. Officers Blood and Diehl had also described both Michael and his vehicle to Sergeant Flores.

---

[14] *Morency*, 2020 WL 5868407, at \*9–10. On appeal, Michael makes no mention of his unlawful search claim against Sergeant Flores in his brief. He has therefore waived that issue on appeal. *United States v. Pelullo*, 399 F.3d 197, 222 (3d Cir. 2005), *as amended* (Mar. 8, 2005).

8

While Sergeant Flores was watching the residence, Michael emerged and got into his car. Sergeant Flores then pulled him over, told Michael why he was detaining him, and the two stood outside Michael's car talking until Officer Diehl radioed Sergeant Flores to inform him that the warrant for Michael's arrest had been sealed, a few minutes later. At Officer Diehl's request, a different officer came to take Michael into custody.

Under these circumstances, Sergeant Flores had reasonable suspicion to detain Michael. Consistent with the Fourth Amendment, a police officer with reasonable, articulable suspicion to believe that a person has committed a crime may conduct a brief, investigatory stop.[15] Sergeant Flores had reasonable, articulable suspicion to believe that the person he saw emerge from the Morencys' residence and get into a car matching the description of Michael's car was the same person that Officers Blood and Diehl were investigating, and to briefly detain him for that purpose. At the conclusion of the stop, an arrest warrant had issued, and Michael was taken into custody. For the reasons discussed above, the officers had probable cause to support the arrest. Therefore, as Michael's brief, pre-arrest detention was supported by reasonable suspicion, and his arrest was supported by probable cause, his Fourth Amendment claims against Sergeant Flores must fail. Additionally, we also agree with the District Court that Sergeant Flores had probable cause to arrest Michael based on what he had learned from Officers Blood and Diehl, even before a formal arrest warrant was issued.[16] Thus, regardless of the nature of

---

[15] *United States v. Torres*, 534 F.3d 207, 210 (3d Cir. 2008).

[16] *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) ("[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment when there is probable cause to believe that a

Sergeant Flores's seizure of Michael, it comported with the Fourth Amendment, and Michael's claim must fail.

## C.

The Morencys also argue that the District Court erred in finding that Roueth consented to the search of their home for firearms.[17] We agree with the District Court that Roueth voluntarily consented to the search.

Although "[t]he Fourth Amendment generally prohibits the warrantless entry of a person's home," this prohibition does not apply "to situations in which voluntary consent has been obtained, either from the individual whose property is searched, or from a third party who possesses common authority over the premises."[18] As to whether the consent was voluntary, there is no "talismanic definition of 'voluntariness,'"[19] and so we must consider the totality of the circumstances.[20] These include the age, intelligence and education of the person giving consent, whether they were advised of their constitutional rights, and whether any questioning preceding the consent was repeated and prolonged.[21]

---

criminal offense has been or is being committed."); *see also Rogers v. Powell*, 120 F.3d 446, 453 (3d Cir. 1997)

[17] *Morency*, 2020 WL 5868407, at *13.

[18] *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990) (citation omitted).

[19] *Schneckloth v. Bustamonte*, 412 U.S. 218, 224 (1973).

[20] *United States v. Price*, 558 F.3d 270, 278 (3d Cir. 2009).

[21] *United States v. Kim*, 27 F.3d 947, 955 (3d Cir. 1994).

No one factor is dispositive.[22]  The Government bears "the burden of proving that the consent was, in fact, freely and voluntarily given."[23]

On *de novo* review of the summary judgment record, we agree with the District Court's finding that Roueth voluntarily consented to the search of the Morencys' home. Officers Blood and Diehl both testified that after they went to the Morencys' home and explained that they were there to look for firearms so Michael could be released, Roueth consented to their searching the home for that purpose.  Roueth testified that she did not recall whether she told the officers that they could come in or not, but that they did. Although she claims she was "confused" when the officers asked if they could search the home, she did not claim that she withheld or limited the scope of her consent in any way.[24]  There is nothing in the record to suggest that Roueth did anything other than consent to the search.

On appeal, the Morencys argue that Roueth's consent was the product of duress. They claim that she was in a vulnerable position, as her husband had just been arrested, and that she was confused by what was going on.  We disagree.

There is nothing in the record to suggest that Roueth's age, intelligence or education would in any way contribute to a lack of understanding of what she was

---

[22] *Id.*

[23] *Price*, 558 F.3d at 277–78 (quoting *Bumper v. North Carolina,* 391 U.S. 543, 548 (1968)).

[24] App. Vol. III-354.  Officer Blood also testified that Roueth appeared "confused" during the encounter, which he attributed to the family's lack of prior contacts with law enforcement.  App. Vol. III-135.

consenting to.[25]  The officers did not subject her to prolonged questioning, and Roueth

testified that their demeanor was normal and not loud or aggressive.  They also spoke to

Roueth at her home, a place where she was comfortable, and officers did not engage in

any questioning designed to incriminate her.[26]  Although the officers did not inform

Roueth of her ability to withhold her consent, she testified that she was present at the

house the previous day when Michael rebuffed the same officers' request to talk to him,

and therefore was likely aware of her ability to do so.  And in any event, "the government

need not establish such knowledge as the sine qua non of an effective consent."[27]

Additionally, even accepting that Roueth was in some way confused by the officers'

presence, this does not render her consent involuntary, as nothing in the record suggests it

was severe enough to deprive her of the ability to consent.[28]  Finally, the officers' claims

---

[25] *See United States v. Givan*, 320 F.3d 452, 459 (3d Cir. 2003) (concluding consent was voluntary when "nothing in the record indicate[d] that [the defendant's] age, intelligence or educational background in any way limited his ability to consent voluntarily to the search").

[26] *See Price*, 558 F.3d at 279 (holding that the defendant voluntarily consented to a search when she "stood on her own property" and "the officers did not ask any incriminating questions before seeking consent to search").

[27] *Schneckloth*, 412 U.S. at 227.

[28] *See United States v. Coombs*, 857 F.3d 439, 449 (1st Cir. 2017) (defendant with history of anxiety, depression, and bipolar disorder who was "nerved up" by arrest at time of consent to search still voluntarily consented; no nexus between prior psychiatric conditions and his consent, and his nervousness was not sufficiently severe to impact consent); *United States v. Duran*, 957 F.2d 499, 503 (7th Cir. 1992) (fragile emotional state of wife granting consent to search home while under arrest at police station did not render consent involuntary); *cf. United States v. Elrod*, 441 F.2d 353, 355 (5th Cir. 1971) (consent to search hotel room by person later found incompetent to stand trial ineffective).

12

that Michael's bail conditions would preclude him from living in the home does not render Roueth's consent involuntary. In addition to being a truthful statement, Michael himself had telephoned Roueth from custody to tell her the same thing, and she had already retrieved one firearm and placed it on the kitchen table by the time the officers arrived. As the officers told her no more than she already knew, this could hardly have convinced her to consent to the search. We therefore agree with the District Court that Roueth's consent was voluntary.

The Morencys also argue that Officers Blood and Diehl exceeded the scope of Roueth's consent by continuing their search after finding the gun that Roueth had retrieved and placed on the kitchen table. They argue that because police records showed Michael owned two guns, and was arrested with one in his possession, even if they were granted permission to search for firearms, the authorization ended when they found the other gun on the kitchen table. While it is true that one who consents may circumscribe the scope of their consent, here the officers sought permission to search the house for firearms, not for one specific firearm.[29] As the officers merely searched the home for other places firearms might be found, they did not exceed the scope of the consent.

### D.

The District Court also found that even in the absence of probable cause, all the officers would be entitled to qualified immunity.[30] We agree.

---

[29] *Florida v. Jimeno*, 500 U.S. 248, 251 (1991); *Kim*, 27 F.3d at 956.

[30] *Morency*, 2020 WL 5868407, at *6–9, *11–12.

13

Qualified immunity protects police officers from civil damage suits if their conduct does not violate clearly established constitutional rights of which a reasonable person would have known.[31] For a plaintiff to prevail in such a suit, he or she must demonstrate that (1) the facts alleged show the violation of a constitutional right; and (2) that the law was clearly established at the time of the violation.[32] Under our precedent, a police officer who reasonably "relies in good faith on a prosecutor's legal opinion that [an] arrest is warranted under the law is presumptively entitled to qualified immunity from Fourth Amendment claims premised on a lack of probable cause."[33]

Here, the officers consulted with an assistant district attorney before either arresting Michael, or searching his home, and therefore are entitled to qualified immunity. As to the claims for false arrest, false imprisonment, and malicious prosecution, Officer Blood sought the advice of ADA Markovits to determine for what charges probable cause existed. She approved the filing of the three charges against Michael. As Officer Blood acted reasonably in relying on her determination that there was probable cause to charge Michael, Officer Blood is entitled to qualified immunity on those claims.[34] Additionally, on the claim that the search of the Morencys' home was

---

[31] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

[32] *Kelly v. Borough of Carlisle*, 622 F.3d 248, 253 (3d Cir. 2010).

[33] *Kelly*, 622 F.3d at 255-56.

[34] *Id.* at 256. The District Court also found that Sergeant Flores was entitled to qualified immunity because even assuming that his detention of Michael violated his Fourth Amendment rights, a reasonable officer would not have known of the violation. *Morency*,

14

unlawful, Officer Diehl testified that he spoke to an assistant district attorney before going to the home, who told him that if there was an adult present who consented to the search, the officers could lawfully search for firearms at the judge's request. Again, as Officers Blood and Diehl reasonably relied on this advice, we agree that they are entitled to qualified immunity.

**E.**

Lastly, the Morencys claim the District Court erred in dismissing their *Monell* claims against the City of Allentown. However, the District Court correctly found that because there was no underlying constitutional violation on any of the Morencys' claims against the officers, their *Monell* claims against the City must also fail.[35]

**III.**

---

2020 WL 5868407 at *11 n.29. The Morencys do not challenge this determination on appeal.

[35] *See Grazier ex rel. White v. City of Philadelphia*, 328 F.3d 120, 124 (3d Cir. 2003) ("There cannot be an 'award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm.'" (quoting *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)). The Morencys also claim that the District Court erred in denying their motion for relief from judgment under Federal Rules of Civil Procedure 60(a) and (b). They made this motion after inadvertently failing to include a statement of material facts when opposing summary judgment, filing such a statement, and then seeking relief from judgment. After reviewing the The Morencys' statement of material facts, the District Court concluded that it would not have altered its decision to grant summary judgment, and therefore denied relief from judgment. We review Rule 60(a) and 60(b) motions (other than those under Rule 60(b)(4)) for abuse of discretion. *Kelly v. Matlack, Inc.*, 903 F.2d 978, 981 (3d Cir. 1990); *Budget Blinds, Inc. v. White*, 536 F.3d 244, 251 (3d Cir. 2008). Having considered the summary judgment record, we find that the District Court did not abuse its discretion in denying the motion.

For the reasons stated above, we affirm the District Court's grant of summary judgment.